RANSOM VS. THE CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA
RAILWAY COMPANY.

*December 23, 1884 — January 13, 1885.*

*Railroads: Warning when locomotive crosses highway.*

Sec. 1809, R. S. (requiring the bell to be rung and the whistle blown
before a locomotive crosses a highway), was intended to guard
against the danger of injury from the frightening of teams trav-
eling upon the highway near the crossing, as well as the danger of
actual collision at the crossing; and a railroad company is there-
fore liable for injuries, caused by a failure to comply with that
statute, to persons traveling upon a highway parallel to the rail-
road and not intending to cross the track.

APPEAL from the Circuit Court for *Eau Claire* County.
This is an action to recover the expenses resulting from
injuries to the plaintiff's minor children, for loss of their
services, and for damage to his horse, buggy, and harness,
which injuries and damage are alleged to have been inflicted
near the crossing of a public highway by the defendant's
railway, and to have been caused by the failure of the de-
fendant's servants running and managing one of its locomo-
tives with a train of cars attached thereto, approaching such
crossing, to ring the bell and blow the whistle of the engine,
as required by statute. This appeal is from an order of the
circuit court sustaining a general demurrer to the complaint.

It appears from the complaint that the railway of the de-
fendant runs from northwest to southeast across sections 2
and 12, in township No. 27, in the town of Union, Eau
Claire county, and that it crosses a public highway located
on the line between sections 11 and 12, in said township,
near the northwest corner of the latter section. There is
also an east and west highway on the south line of section
2, nearly parallel with the railway, which intersects the
north and south highway at or near the railway crossing.
As the railway approaches the crossing from the west, it

passes through a deep cut twenty-five or thirty rods in length, because of which, and of a dense growth of small timber between the railway and the highway, and an elevation between, persons traveling the east and west road cannot see passing trains from the west for some distance and until the crossing is nearly reached; and the topography of the ground between is such that it is difficult to hear trains or know of their presence there unless the whistles of the engines are sounded and the bells rung. The east and west road approaches the crossing from the west on a descending grade.

On December 2, 1883, the plaintiff's wife, accompanied by their two minor children, was driving a horse of the plaintiff, hitched to his buggy, on the east and west road, from the west towards the railway crossing. When within ten or fifteen rods of the crossing, and near the railway, a train of cars from the west, running very rapidly, suddenly, and without notice or warning, emerged from the cut and so frightened the horse that he ran away, turned into the north and south road, and overturned the buggy, killing the plaintiff's wife, severely injuring his children, and greatly damaging his horse, buggy, and harness.

It is also alleged that the horse was gentle and well trained; that the plaintiff's wife was accustomed to drive the horse, and was an experienced driver of horses; that she and her children who were with her in the buggy exercised due and proper care to avoid the accident; that neither of them saw or heard the approaching train or knew it was coming until it emerged from the cut; that the engine whistle was not blown or bell rung; and that had those signals been given, as the statute requires, the occupants of the buggy would have known of the approach of the train in time to have guarded against and avoided the accident.

For the appellant there was a brief by *Alexander Meggett* and *J. F. Ellis*, and the cause was argued orally by *Mr.*

*Meggett.* They argued, among other things, that sec. 1809, R. S., not having confined the duty of giving signals to travelers on the highway crossing the railroad, must be presumed to be for the benefit of all persons who, while in the exercise of proper care, were likely to be injured by a failure to give them. It was intended not only to protect travelers from collisions, but also to secure their horses from taking fright. 1 Thomp. on Neg. 349, 352, 418–420; *Norton v. Eastern R. R. Co.* 113 Mass. 367; *Hart v. C., R. I. & P. R. Co.* 56 Iowa, 166; *Pennsylvania R. R. Co. v. Burnett,* 59 Pa. St. 259; *Ingersoll v. N. Y. C. & H. R. R. R. Co.* 4 Hun, 277; *Jetter v. N. Y. & H. R. R. Co.* 2 Keyes, 154.

For the respondent there was a brief by *John D. Howe* and *S. L. Perrin,* and oral argument by *Mr. Howe.* To the point that the statute was intended only for the protection of persons about to use the crossing, they cited: *East Tenn., V. & G. R. R. Co. v. Feathers,* 10 Lea, 103; *O'Donnell v. P. & W. R. R. Co.* 6 R. I. 211; *Holmes v. C. R. R. & B. Co.* 37 Ga. 593; *Elwood v. N. Y. C. & H. R. R. R. Co.* 4 Hun, 808; *Harty v. C. R. R. Co. of N. J.* 42 N. Y. 468; *Phil. & R. R. R. Co. v. Spearen,* 47 Pa. St. 300; *Fletcher v. A. & P. R. R. Co.* 64 Mo. 484; *Northern Cent. R'y Co. v. State,* 6 Am. & Eng. R. R. Cas. 66; *Haas v. G. R. & I. R. R. Co.* 47 Mich. 401.

LYON, J. Independently of the fact that the defendant's locomotive and train of cars were near the highway and railroad crossing when they emerged from the cut and frightened the horse being driven on the adjacent highway by the plaintiff's wife, we think the defendant would have been under no obligation either to slacken the speed of the train or give any signal of its approach. There is no statute, and we are aware of no common-law rule, which, under such circumstances, requires railroad companies to observe those

JANUARY TERM, 1885.    181

Ransom vs. The Chicago, St. Paul, Minneapolis & Omaha R'y Co.

precautions to avoid accident. If, therefore, the defendant is liable in this action, it is so because it failed to comply with the requirements of the statute prescribing its duty when its train approached the crossing of the highway.

The statute provides that "before crossing any highway, except in cities and villages, with any locomotive, the whistle shall be blown eighty rods from such crossing, and the engine bell rung continuously from thence until the highway shall be crossed by the locomotive." R. S. sec. 1809. Under this statute no negligence or breach of duty can be imputed to the defendant because of the speed of the train. The case made by the complaint is that the whistle was not sounded, or the bell rung, when the train approached the crossing, and that the failure to do so was the proximate cause of the injuries complained of.

It is doubtless true that unless the defendant owed the duty to the plaintiff's wife and children to blow the whistle and ring the bell, the complaint fails to state a cause of action. But if it owed them such duty, then the complaint states a cause of action. These propositions are illustrated by some of the cases cited by counsel for the defendant. Thus it was held in *Harty v. C. R. R. Co. of N. J.* 42 N. Y. 468, that the sole object of a statute of New Jersey, similar to ours, was to protect persons traveling the highway at or near the crossing, and that the railroad company owed no duty to a person injured by a passing train, when such person was on the track near a crossing (although lawfully there), to blow the whistle or ring the bell. Hence it was held that a failure to give the signals required by the statute did not render the railroad company liable for such injuries. To the same effect is *O'Donnell v. P. & W. R. R. Co.* 6 R. I. 211.

The controlling question in this case is, therefore, Did the defendant company owe the duty to the plaintiff's wife, and their children who were with her in the buggy, to give the

signals required by the statute of the approach of its train to the crossing?

It was maintained in the argument on behalf of the defendant that the statutory precautions have no application to a person traveling a highway parallel with the railroad, but only to those travelers on the highway who are about to use the crossing. The highway along which plaintiff's wife was driving when her horse became frightened and unmanageable, was substantially parallel with the railroad at the place of the accident, and the complaint does not allege that she intended to or was about to drive across the railroad.

None of the cases cited by counsel to these propositions seem to sustain the doctrine contended for, with the single exception of the case of *East Tenn., V. & G. R. R. Co. v. Feathers*, 10 Lea (Tenn.), 103. The court gave a construction to the statute of that state which, to some extent, sustains the position of counsel for defendant. It seems to us that the case was entirely outside the statute, and called for no construction thereof. In that case the facts, as stated by the court, were these: "Plaintiff and his wife were riding horseback from church. The road they chose to travel after crossing the railroad ran along, near, and parallel to the railroad for probably a mile or more. Plaintiff and wife were riding along this road, going east, having passed the crossing *from a quarter to half a mile* west of where the public road crossed the railroad, when a train approached from the west, going east, the noise of which frightened the wife's horse, which threw her and injured her severely." From this statement, although somewhat obscure, it is understood that the injured person was more than a quarter of a mile from the crossing when her horse became frightened and threw her, and it is a fair inference from the statement that the train of cars was an equal distance therefrom at the same time, and had passed the crossing. The statute required the signal to be sounded when the locomotive was

approaching, and one fourth of a mile from the crossing. Hence, at the place of the injury, the railroad company was under no statutory obligation to sound any signal. The court held that it was under no such obligation to the plaintiff and his wife. Under the facts, no good reason is perceived why it might not have been held as well that the company was under no such obligation to any person.

In the other cases cited by defendant's counsel, either the persons injured were not upon the highway when injured, or, being upon the highway, they were charged with contributory negligence. The New York and Rhode Island cases above cited, and also *Holmes v. C. R. R. & B. Co.* 37 Ga. 593, and *Elwood v. N. Y. C. & H. R. R. R. Co.* 4 Hun, 808, belong to the former class. The case of *Fletcher v. A. & P. R. R. Co.* 63 Mo. 484, and *Haas v. G. R. & I. R. R. Co.* 47 Mich. 401, belong to the latter class.

On the other hand, as we have already seen, the case of *Harty v. C. R. R. Co. of N. J.* 42 N. Y. 468, holds that the statute was enacted for the protection of persons traveling the highway at or near the crossing. It does not exclude from the protection of the statute travelers on the highway who do not intend to use the crossing. In the opinion by EARL, C. J., the following language of ALLEN, J., in *People v. N. Y. C. R. R. Co.* 25 Barb. 199, is quoted approvingly: " The hazards to be provided against were twofold: (1) The danger of actual collision at the crossing; and (2) that of damage by the frightening of teams traveling upon the public highway " near the crossing. In the latter case, the court was considering a statute of New York in principle precisely like ours. The track of the railroad crossed the highway at an elevation of fifteen feet above it. Hence, in that case, there was no possibility of a collision. Yet the court held that persons traveling the highway in the vicinity of the crossing were within the protection of the statute, and that the railroad company owed them the duty to ring

the bell and blow the whistle, as required by the statute. Cases elsewhere give support to the same doctrine. See *Wakefield v. C. & P. R. R. R. Co.* 37 Vt. 330; *Pennsylvania R. R. Co. v. Barnett,* 59 Pa. St. 259; 1 Thomp. Neg. 352, and cases cited. The present case rests upon the same principle, for it can make no difference whether the traveler upon the highway passes under the railroad or on a parallel road in the vicinity of the crossing. The danger of collision is eliminated from both cases, and the danger of teams becoming frightened is common to both.

We think the construction thus given to the New York statute by the courts of that state is most reasonable and sensible, and is sustained by the weight of authority. We do not hesitate to adopt it as the true construction of our own statute. It must be held, therefore, that, upon the case made by the complaint, the defendant company owed the duty to the plaintiff's wife and children to give the signals required by the statute when its locomotive and train were approaching the crossing. Its failure to do so was negligence; and if the plaintiff can satisfy the jury that it did so fail, and that such failure was the proximate cause of the injuries complained of, he ought to recover.

We conclude that the complaint states a cause of action, and the demurrer thereto should have been overruled.

*By the Court.*— Order reversed, and cause remanded for further proceedings according to law.

