ALONZO SANBORN v. THE DETROIT, BAY CITY & ALPENA RAILROAD COMPANY.

*Railroad companies—Statutory signals—Negligence—Injury at private crossing.*

Plaintiff, while lawfully placing logs on skidways on defendant's unfenced right of way along its track for transportation by defendant, was injured by one of defendant's logging trains, while attempting to cross the track with a load of logs at a crossing made over the track for that purpose by a contractor for whom plaintiff was working. There was a highway crossing about three-quarters of a mile from the place of the accident. The negligence averred was the failure of defendant to ring the engine bell and blow the whistle at the private crossing, and also to give the statutory signals before reaching the highway crossing. And it is held:

a—The failure to give the signals at the private crossing was. not negligence as matter of law.

b—The failure to sound the whistle and ring the bell as required by 3 How. Stat. § 3375, before reaching the highway crossing, was such a neglect of duty as would, in the absence of contributory negligence on the part of the plaintiff, entitle him to recover, if such neglect was the direct and proximate cause of the injury.

Error to Alpena. (Kelley, J.) Argued November 5,. 1891, and reargued February 11, 1892. Decided May 13, 1892.

Negligence case. Defendant brings error. Reversed.. The facts are stated in the opinions.

*A. M. Henry (J. C. Shields,* of counsel), for appellant.

*Turnbull & Dafoe (Frank Emerick,* of counsel), for plaintiff.

LONG, J. This cause was tried in the Alpena circuit. court. Plaintiff had verdict and judgment. Defendant brings error.

The first count of the declaration alleges that—

"The defendant, at and before the time of commit-- ting the grievances hereinafter mentioned, was a corpo-- ration organized and existing under the general railroad laws of this State, and was operating and running its railroad and business between Alger and the city of Alpena, portions of its road and. tracks passing through Alpena county; and the said portions of its said road and tracks which passed through Alpena county were not, and never had been, fenced, and the public and plaint-- iff during all of this said time were invited and permit- ted by the defendant to bring timber and logs to its said track, and pile and skid said timber along the side of said track, so the same could be conveniently loaded upon the cars of defendant for transportation. And the plaintiff says that on the 18th of January, 1890, at the said county of Alpena, he was engaged, by the invita- tion of defendant, with a team of horses and log boat,.

in drawing logs and timber to defendant's said track at a point about one mile south-west of the city of Alpena, and was then and there piling and skidding the said timber along the side of defendant's said track, for the purpose of having the same loaded upon defendant's cars and transported to market. And plaintiff says that he had thus been engaged at work for three weeks previous to said 18th day of January, and that in doing this said work had to use defendant's said track and road, and pass and repass over the same very frequently, and the defendant and its servants knew and had knowledge during all this time while plaintiff was doing his said work, as aforesaid, that plaintiff was thus using its said road and track and doing this said work as aforesaid. And the plaintiff says it was the duty of defendant, in running its trains and carrying on its said business, to have given warning to plaintiff in some manner of the approach of its trains, and not to have run its trains against and into plaintiff, while he was at work as aforesaid; yet the said defendant negligently and carelessly neglected its said duty on said 18th day of January, 1890, and while plaintiff was at work as aforesaid, and while observing due care upon his part, the defendant negligently and without any warning whatsoever run and caused to be run one of its freight trains along its said track into and against said plaintiff and his said team and boat load of logs, while plaintiff was crossing defendant's said track, doing the work aforesaid, thereby violently knocking the plaintiff down, and throwing the said team and log boat and its load of logs violently over and against the plaintiff, thereby greatly and permanently injuring plaintiff."

The second count alleges that—

"The defendant, well knowing its said duty, and on the 18th day of January, 1890, at the county of Alpena, did not and would not observe the same, but, upon the contrary, carelessly, negligently, and unlawfully so conducted its said business and managed and run its said trains on its said road and along this portion of its said track when plaintiff was at work, as aforesaid, as not to give plaintiff any warning or notice of the approach of said train, and then and there, without sounding or giving any signal, alarm, or notice to plaintiff that any of its trains were approaching, did with great force then

and there run into, over, and against plaintiff with one of its said engines (known as No. 14) and train of cars, thereby permanently and greatly injuring plaintiff, and causing all the damage set forth in the first count of this declaration, which said portion of said first count is hereby made a part of this count."

The third count alleges:

"The defendant was daily running its engines and trains, transporting logs and timber to the city of Alpena; and plaintiff says at said time he was by the permission, invitation, and consent of defendant using a portion of defendant's said road and track near the city of Alpena in banking, skidding, and piling logs upon it for the purpose of having the same transported by defendant's said trains to the city of Alpena, and the defendant and its agents knew and had notice that plaintiff was so using its said track and premises, and was in the habit of giving plaintiff notice of the approach of the said trains or engines over that portion of its said track being used by plaintiff as aforesaid; and plaintiff says it was the defendant's duty to give him such notice at this said time; but the plaintiff says that the defendant recklessly and unlawfully neglected its said duty, and carelessly, at the said time, January 18, 1890, ran a train of cars over this said portion of its road where plaintiff was at work, as aforesaid, without any notice or warning to plaintiff whatsoever, and caused the said train of cars to run against, over, and upon plaintiff, causing all the damage and injury to him specially set forth in the first count of this declaration."

It appeared upon the trial that at the time of the injury complained of the plaintiff was hauling and skidding pine saw-logs along defendant's track, about four miles from the city of Alpena, in the woods, and from one-half of a mile to a mile from any highway and railroad crossing. The logs were being taken off from an 80-acre tract of land, through which the railroad extended north and south, the logs being taken from the east side of the railroad track. The plaintiff was a man about 37 years of age at the time of the injury. He was hauling out these logs for a Mr. Chapman, who had

the job. Plaintiff had been at work two or three weeks prior to the injury. Others were there also, putting in logs alongside the railroad track, for the purpose of having them hauled by the defendant company to Alpena. Skidways had been made on both sides of the railroad track across this 80-acre tract, and the logs were being put on the skidways. For the purpose of crossing and recrossing the railroad track with the boats upon which the logs were being hauled, Mr. Chapman had in three places along this tract of land placed planking upon either side of the railroad track, and had called the attention of the section foreman of the defendant company to the same, who had examined them, to see whether they would interfere with the running of the trains. Defendant's road was used and operated as a commercial road, running freight and passenger trains thereon, as well as a logging road for the hauling of saw-logs along its line to Alpena and other points. The logs from this 80 acres were being put upon the skidways at the rate of from 100 to 200 per day. Upon either side of the railroad, and coming up to the defendant's right of way, the lands were covered with timber and brush, so that the railroad track could not be seen until one approached within two or three rods of it, when the track could be seen for a mile from where the plaintiff was employed. The plaintiff's haul of logs was only about 30 rods from the railroad, and he was perfectly familiar with the running of the trains over the road, as during the whole three weeks of his work he had been in the habit of crossing the track every day. The train by which the plaintiff was injured was a logging train. All trains had usually given the statutory signal by ringing the bell and sounding the whistle at Beck's farm crossing, which was from one-half to three-quarters of a mile north of the place where the plaintiff was working.

On the afternoon of January 18, 1890, at about 2 o'clock, the plaintiff claims that, having loaded three logs upon his boat, some 30 rods distant from the railroad track, he started to haul to the skidway across the track. Two of the logs were 20 feet in length, and the other 18 feet. He testified that he drove upon a little sharp hill, about three rods from the track, and stopped, and looked for the train; that he was then about a horse or two horses' lengths from the track; that he stepped forward of his horses, so he could see up and down the track; that he heard no sound of the approaching train, but that it was snowing and blowing so that he could only see a few rods in either direction; that he then went back to his load, stepped upon one of the logs, started his team forward, which took him from one to two minutes, and, when his horses had so far crossed the track that their hind feet were between the rails and his log boat just entering upon the track, he heard a toot of the engine, looked up, and saw the train almost upon him; that he attempted to swing his horses around, and get them off from the track, and for that purpose stepped from the log upon which he was riding, picked up a switch, and struck them; that his horses were frightened by the toot of the engine, and stopped, when the engine struck between the horses and the boat, overturning the logs upon him, and injuring him. He also testified that while all the trains had been accustomed to give the statutory signal at Beck's farm crossing, the train by which he was struck did not ring the bell or sound the whistle at that crossing. He testified upon that subject as follows:

"*Q*. During all this time, state where the trains would give you the signals as they came from Alpena.
"*A*. That was at Beck's farm.
"*Q*. At this general railroad crossing?

"*A.* Yes.

"*Q.* State what they did when they came there.

"*A.* They generally rung the bell and blowed the whistle. The passenger always did there. I never knew it to fail.

"*Q.* Did you ever know any other train, up to this time, but what did that?

"*Mr. Shields:* I object to that as incompetent and immaterial.

"*The Court:* I suppose it is the theory of the plaintiff that on this occasion they did not even do that for a mile distant from where he was working.

"*Mr. Shields:* I don't think it has any importance. (The last question being read by the stenographer, the witness answered it as follows:)

"*A.* No, I don't think I did; not that I noticed. I think they all blew at that crossing, for that is the crossing that I went by. When I heard that I always looked up.

"*Q.* State to the jury whether this train that came there that day on which you got hurt,—state to the jury whether that sounded any bell, or gave any whistle up to this crossing, before they reached you. (Which question was objected to as incompetent and immaterial, and not covered by the declaration, by defendant's counsel. Declaration was then read.)

"*The Court:* You may take this. (To which ruling defendant did except.)

"*A.* No sir; they did not,—that is, until they got right on top of me. Just as they got close to me they gave a little toot.

"*Q.* I am asking you about the crossing. Now, then, state to the jury if they had given you this signal or warning by tooting their whistle or ringing their bell at this crossing, state to the jury whether you would have been caught upon the track, or whether the injury would have been inflicted.

"*Mr. Shields:* I object to that as incompetent and inadmissible.

"*The Court:* You may show, if they had given any whistle or rang the bell at the crossing, whether he would have heard it.

"*Q.* You may state, if they had given you any signal at this crossing, whether you would have heard it.

"*A.* I could have heard it sure. I always heard it when they whistled there.

"*Q.* State to the jury in reference to your hearing the whistle and bells of the other trains that day at this crossing,—that day when they came down there.

"*Mr. Shields:* I object to that as incompetent.

"*The Court*: I think it is proper. You may have an answer to it. (To which ruling defendant excepted.)

"*A.* I did.

"*Mr. Turnbull:* Now I want to ask him the question I did before, because our statute is peculiar. It, in so many words, says that the railroad is liable for any injury that they may perpetrate by reason of their not giving those signals at this crossing. Now, then, I want to ask this witness the question whether, if they had given him that signal at the crossing, this injury would have taken place.

"*Mr. Shields:* Mr. Turnbull cannot make a lawsuit here contrary to the facts and contrary to his declaration. Injuries that happen upon a public highway are one thing; injuries that happen a mile or a half mile away from a crossing are another thing.

"*The Court:* I think you may show that, if the signals had been given at the point that witness has designated, that if he was upon the track he could have withdrawn himself and team,—could have avoided the injury.

"*Q.* You may state whether, if those signals had been given at the crossing, at the place where you were on the track, or near the track, where you were putting these logs, whether you could have avoided and would have avoided being on the track.

"*Mr. Shields:* I object to that as leading, incompetent, and inadmissible.

"*The Court:* Take an answer.

"*Mr. Shields:* I take an exception.

"*A.* Yes, sir; I would have avoided it."

Plaintiff further testified that the afternoon freight usually passed that point about 2 o'clock, and that the log train by which he was injured usually passed there a little behind the freight train, sometimes a half hour later and sometimes less; but that on this day the log train came down ahead of the freight, and about an hour earlier.

91 Mich—35.

Mr. Chapman was called by the plaintiff as a witness, and testified that this Beck's crossing was about three-quarters of a mile from where plaintiff was injured; that he did not hear the ringing of the bell or the blowing of the whistle at this crossing, and the first he heard of the train was the sounding of the whistle at the place of the injury. He further testified that by spells that day the wind was blowing so desperately that you could not see three feet away, and then it would let up; that the wind and snow did not interfere with the sound of the approaching train, and that one could hear the sound a good deal better that day.

The defendant introduced the evidence of the engineer, fireman, and brakeman on the train. They each testified that it was their custom to ring the bell and blow the whistle at Beck's farm crossing, but that upon that particular day they were unable to state that this statutory signal was observed at that particular crossing any more than they could at any other crossing. The fireman testified that he looked out of the cab window, and saw the plaintiff about three car-lengths from the engine; that at that time the plaintiff was within 12 or 14 feet of the track, walking along the side of his boat; that he at once pulled the bell, and the engineer blew the whistle, when the plaintiff put the whip to the horses, and tried to run across the track, and when struck by the engine had got nearly across, and the boat had got on the track. This testimony was corroborated by the engineer and the brakeman.

At the close of the testimony the defendant, by its counsel, requested the court to charge the jury as follows:

"4. Whether the bell was sounded or whistle blown on approaching the highway crossing, prior to reaching

the place where Sanborn was, is of no importance in this case. Those signals are for persons who may be upon the highway."

"8. The plaintiff was aware, from his three weeks' work along the track, that trains were regularly running over the road, and it was his duty to care for himself, and avoid any collision.

"9. It would be negligence for the plaintiff to go upon the track, relying upon the fact that he did not hear any signals at the highway crossing or near there."

"A. If the jury believed the plaintiff saw or heard the train coming before going himself near the track, he cannot recover.

"B. If the jury believed that the plaintiff, if he had used ordinary care, would or should have known the train was coming, he cannot recover; and in determining this the jury may consider, with other facts, that the train was on schedule time."

These requests the court refused to give in charge to the jury, and charged the jury as follows:

"Now, the plaintiff further contends that on this day in question the defendant corporation, in running the train which is claimed to have done the injury in this case,—if any was caused,—disregarded the required signals at the public highway crossing, which has been described here to be within half a mile or three-quarters of a mile this side—towards the city—from the point of the accident. It is claimed here that the defendant corporation—its employés—in running that train entirely omitted the danger signals at this public highway crossing. I say to you, gentlemen, it was a duty which the law prescribes and imposes upon the defendant corporation at that highway crossing to give the requisite signals by the ringing of the bell and the blowing of the whistle. This is a duty which the law of this State imposes upon every railroad corporation when they seek the right and franchise of laying down 'and operating a railway and running their trains over their track. Now, it is one of the theories of the plaintiff's case that, if this signal had been given, he would have been warned of the approach of this train which caused the injury. And I say to you, gentlemen, here, that if you find as a fact in this case that the danger signals were not given

at the highway crossing, and that, in consequence of the failure upon the part of the defendant corporation to give such signals, this injury occurred, this accident occurred, which resulted in the injury to the plaintiff,— if it has resulted in any injury to him,—the corporation would be liable. It was the omission of a duty which the law prescribes, and, if from the omission to perform that duty injury has resulted to this plaintiff, the defendant would be liable.

"It is further contended and claimed here upon the part of the plaintiff that no warning was given by the train in question which caused the injury as it approached these other crossings, which had been put down, as the plaintiff claims, with the knowledge and acquiescence of this defendant corporation. Now, upon this branch of the case I instruct you, gentlemen of the jury, that, if the defendant corporation knew that a crossing had been made, if the defendant, by its officers or agents, were present, and acquiesced in and recognized the making of a crossing at the point where the plaintiff was injured, if you find that as a fact from the evidence in this case, if you find such to be the fact from the evidence in this case, I charge you that it would then be the duty of this defendant corporation, if they had any notice or knowledge that people were using such crossing and working thereabouts, to give reasonable warning of the approach of trains at that crossing. If that crossing was made there with their knowledge and acquiescence and consent, and they knew it was to be used by men and animals in drawing logs to their railway, and banking them along their railway, it was their duty, when approaching that point, to give such signals and such warning as would give persons to understand or know that a train was approaching, and that danger might be expected, so that they could avoid it."

The objection to the testimony, the defendant's requests to charge, and the charge as given, raise the important questions for determination here.

It is contended by plaintiff's counsel that the court was not in error in permitting him to show that the danger signals were not given at the highway crossing; that the plaintiff was injured by reason of the failure of

the engineer to ring the bell or blow the whistle at this crossing; that the court was not in error in refusing the defendant's request to charge on that subject, and in charging the jury that, if they found that defendant neglected to give such signals, and the plaintiff was injured for such reason, the defendant would be liable. It is also contended that the court was not in error in charging the jury that it was the duty of the defendant, if it knew that this crossing had been made by Chapman, and was being used by the plaintiff in hauling logs, to give reasonable warning by the whistle or bell of the approach of the train.

Section 3375, 3 How. Stat., provides as follows:

"A bell of at least thirty pounds weight, and a steam whistle, shall be placed on each locomotive engine, and said whistle shall be twice sharply sounded at least forty rods before the crossing is reached, and after the sounding of the whistle the bell shall be rung continuously until the crossing is passed, under a penalty of one hundred dollars for every neglect: *Provided*, that at street crossings within the limits of incorporated cities or villages, the sounding of the whistle may be omitted, unless required by the common council or board of trustees of such city or village; and the company shall also be liable for all damages which shall be sustained by any person by reason of such neglect."

Counsel for plaintiff contend that under these provisions of the statute defendant, to escape liability, should have given the signal at Beck's crossing, and in support of that proposition cite *Ransom v. Railway Co.*, 62 Wis. 178 (22 N. W. Rep. 147); *Norton v. Railroad Co.*, 113 Mass. 366; *Pollock v. Railroad Co.*, 124 Id. 158; *Palmer v. Railroad Co.*, 38 Minn. 415 (38 N. W. Rep. 100); *Cosgrove v. Railroad Co.*, 87 N. Y. 88; *Voak v. Railway Co.*, 75 Id. 320; *Haas v. Railroad Co.*, 47 Mich. 402; *Chicago & N. E. Ry. Co. v. Miller*, 46 Id. 532; *Klanowski*

*v. Railway Co.*, 57 Id. 525; *Schindler v. Railway Co.*, 87 Id. 400.

An examination of these cases will show that not one of them bears out the claim made by plaintiff's counsel in the present case. All of the cases above cited are either where the persons were on the highway when .injured, or are cases where some other negligence aside from the ringing of the bell or blowing of the whistle at the public highway crossing was charged.

In the case of *Ransom v. Railway Co., supra,* the plaintiff's wife, accompanied by their two minor children, was driving a horse on the highway towards the railway crossing. The road upon which she was driving was an east and west road, and ran parallel with the railroad, and the railroad crossed a north and south highway near that point. As the train approached this crossing of the north and south highway, the engineer failed to ring the bell or blow the whistle. The train had passed through a deep cut near this crossing, and, emerging from it, frightened the horse driven by plaintiff's wife, causing it to run, overturning the buggy, killing his wife, and severely injuring his children. The statutes of Wisconsin provide that, before crossing any highway, except in cities and villages, with any locomotive, the whistle shall be blown 80 rods from such crossing, and the engine bell rung continuously from thence until the highway shall be crossed by the locomotive. It was contended in that case that the defendant company owed the duty to the plaintiff's wife and children to give the signals required by the statute of the approach of its train to the crossing, although she was not driving upon the highway which crossed the railroad track, but upon one parallel with the railroad. The court held that persons driving on the highway in the vicinity of the crossing were within the

protection of the statute; that it made no difference that the highway upon which the person was traveling was one crossing on a level with the railroad, or whether it passed over or under or parallel with it; that all persons using the highway for public driving were entitled to the protection that the statute affords, which compels the ringing of the bell and the blowing of the whistle at all highway crossings.

In *Norton v. Railroad Co., supra,* the plaintiff was driving his horse, hitched to a wagon, on a highway crossed by defendant's track at grade, and when within 36 feet of the track a train of cars passed over the crossing, frightening his horse, causing him to kick, breaking plaintiff's leg. It was claimed in that case that no bell was rung or whistle sounded to intimate the approach of the train. It was further claimed in that case that this was a flag station, and no flagman was there. It was contended upon the part of defendant that, even if the signals by bell or whistle were omitted, and if, in consequence of this omission, the plaintiff approached nearer to the train than he would otherwise have done, the injury being caused by the fright of the horse, occasioned by this proximity, it was not to be held responsible therefor, because such signals are intended to protect travelers at highway crossings from actual collision only, or at most from taking any position which involves imminent danger of collision; and that this is the extent of the protection which the statute affords. It was held by the court that a fair construction of the statutes of Massachusetts (which are somewhat similar to ours) is that these signals are also intended for the benefit of those approaching crossings, for whom their warning would be valuable, and that any one thus situated, who is injured by the omission of that which the statute requires, has

just ground of complaint. The reason of this rule, as stated by the court, is that—

"At such crossings the railroads are permitted to interfere with the ordinary use of a public easement, and, from the nature of the motive power employed by them, and the difficulties attending its management, the exercise of their right temporarily excludes the ordinary traveler from the use to which he is at other times entitled. But, as this use must often be made with animals liable to be alarmed by the noises of the passing train, it is important for his safety that he should be informed of the approach of the trains to the highway, in order that he may take proper measures against danger from such alarm. The signals are intended to give sufficient warning to enable him so to do."

The same rule was laid down in *Pollock v. Railroad Co., supra.*

In *Palmer v. Railroad Co., supra,* one of the acts of negligence complained of was the omission to give a signal of the approach of the train by ringing a bell or blowing a whistle before reaching the crossing, as required by statute. That statute is somewhat similar to our own. The action was for killing plaintiff's cattle, then on a highway crossing. It was contended that these signals required by the statute were only intended as a warning to human beings, and not to cattle. The court held that the omission to give these signals might properly be shown, and that it was for the jury to say, under all the circumstances of the case, whether the giving of the signals would have prevented the accident.

In *Cosgrove v. Railroad Co., supra,* the negligence imputed to the defendant was the failure to ring the bell or sound the whistle. The deceased and one Barringer were killed by the collision of the horse and carriage, in which they were riding, with defendant's train, upon a public highway crossing. The question

was one of contributory negligence, and there was no question in the case but that it was the duty of the defendant company to ring its bell and blow its whistle.

In *Voak v. Railway Co., supra,* the plaintiff was riding in a buggy, she herself driving. She approached the track with great circumspection, listening and looking for the train; but, in consequence of certain obstructions, she did not see the train until she was within three rods of the crossing. She could not turn around. Her horse became frightened and restive. She backed it about three rods, and then, at a loud blast of the whistle for the first time given at the crossing, her horse turned around, and she was thrown out of the buggy and injured. The statute of New York provides that, where a railroad shall cross any traveled public road or street on the same level with the railroad, the engine bell shall be rung or whistle sounded at least 80 rods from the crossing, and that the bell shall be kept ringing, or that the whistle shall be sounded at intervals, until the engine shall have crossed the road; and for neglect to comply with these requirements the railroad company is made liable for all damage sustained by any person by reason of the negligence. It was stated by the court that—

"The purpose of this provision is the protection of persons actually crossing a railroad track, and also of persons approaching such a track;" citing *People v. Railroad Co.,* 25 Barb. 199, and *Harty v. Railroad Co.,* 42 N. Y. 471. "The warning is required to be given so that all persons lawfully using a public highway may keep out of the way of danger at railroad crossings; danger not only from collision at the crossings, but also from the fright of horses by passing trains. The law makes it negligence not to give the warning, and then imposes a liability for all the damage which can properly be attributed to such negligence."

In *Haas v. Railroad Co., supra,* the action was brought by the plaintiff, as administrator of the estate of Adrian

Leenders, for causing the death of his intestate by negligently running one of its trains so as to collide with his team while he was crossing defendant's track in passing along the public highway. On the trial in the court below the case was taken from the jury by the instruction of the judge that they should return a verdict for the defendant. The defense insisted that the only negligence shown was imputable to Leenders himself, who carelessly drove against the train, though he was fairly warned of its approach. It was said in the case that no sign-board, as required by the statute, had been erected at this crossing; but the plaintiff gave evidence that his decedent was familiar with the crossing; that he not only knew about it, but had frequent occasion to pass over it. More than this, it was a part of the plaintiff's case that the decedent had the crossing in mind when he approached it on the occasion in question, and checked his team to listen for the signals of the approach of the train. It was said by this Court that, in view of that fact and the showing of the plaintiff himself, it was of no importance in the case that the railroad company had failed to erect the caution board; that the duty to erect it was a duty to the public, and no private action could be grounded upon the neglect unless individual injury was traced to it.

In *Railway Co. v. Miller, supra,* the injury was óne occurring upon the public highway. In that case the complaint was that the defendant company failed to ring its bell or blow its whistle in approaching the highway crossing, by reason of which the plaintiff was injured.

In *Klanowski v. Railway Co., supra,* the injury was received upon the highway crossing.

It is upon these authorities that the plaintiff's counsel ask this Court to give to the statute the broad construction contended for. We cannot agree with the learned

counsel for the plaintiff that the statute was ever intended by the Legislature to be so construed. Similar statutes in other states have received a different construction by the courts of those states.

In *Harty v. Railroad Co.*, 42 N. Y. 468, the statute of New Jersey, similar to ours, was construed by the court of appeals of New York. The action was brought by the administratrix against the defendant company for negligently causing the death of her husband. The intestate was struck by one of the defendant's engines, and fatally injured, at a point about 200 feet east from a road crossing. The railroad runs easterly and westerly, and the highway crosses it northerly and southerly. The train was going westerly. There were three parallel tracks. Upon the south track there were two gravel trains, standing still; one just east of the crossing, and one partly across and west of it. There was a train from the west upon the middle track, which at the time of the accident had reached a point 1,500 feet west of the crossing, and the whistle upon that engine was blowing. The intestate, for three months, had lived within a quarter of a mile of the crossing, and in sight of the railroad. He worked in a slaughter-house near the railroad, and about a quarter of a mile east of the crossing. He and many other persons working in the slaughter house had been in the habit daily of going to and from the slaughter-house, passing over the railroad to and from the crossing. On the day of the accident he started from the slaughter-house, to go home. He was passing along west upon the middle track, and it is supposed that he either saw the train coming east upon the same track, or heard its whistle, and stepped upon the north track, and just as he did so he was struck by the train going west upon the north track. The bell upon this train was not rung and the whistle not blown, and there

was no sign-board at the railroad crossing, as required by law. Earl, C. J., speaking for the court, said:

"I shall assume that the intestate was lawfully upon the railroad at the time of the accident. There was sufficient evidence to authorize a jury to find an implied license to all the persons working at the slaughter-house to go upon the railroad between the highway crossing and the slaughter-house. But I think the plaintiff should have been defeated at the circuit, both because he failed to show any negligence on the part of the defendant, and because the negligence of the intestate contributed to the accident. The only negligence alleged against the defendant was that its servants upon the engine did not ring the bell nor blow the whistle, as required by the New Jersey law. The sole object of this law, it seems to me, was to protect persons traveling upon the highway at or near the crossing. In the language of Allen, J., in *People v. Railroad Co.*, 25 Barb. 199, in reference to a similar law of this state: ' The hazards to be provided against were twofold: (1). The danger of actual collision at the crossing, and (2) that of damage by the frightening of teams traveling upon the public highway, near the crossing. For the protection of such persons railroads were required to put up the sign-board at the crossing, and to ring the bell or blow the whistle. The sign-board was to be put up 'so as to be easily seen by travelers;' and none of these precautions were required except where the railroad and highway crossed each other upon the same level, thus showing clearly that the law-makers had in mind only the danger to travelers upon the highways by collisions at the crossing. Railroad companies were not required by this law to ring the bell nor sound the whistle when the highway passed along the railroad, nor when it passed at an elevation over it or under it; nor were they required to take these precautions for the protection of persons walking along upon the railroad. I conclude, therefore, that the intestate was not within the protection of this law, and that the railroad company owed him no duty under the law to ring the bell or sound the whistle. But the duty of railroads, as to giving alarms by bell and whistle, is not limited to the measures imposed by this law. They are bound to use at least ordinary prudence and diligence to avoid collis-

ions with persons lawfully crossing their tracks, and hence at road crossings and in the streets of villages and cities, in the absence of any statute law they would be required to use these ordinary precautions to avoid accidents, and, if they omitted them, they would be liable to persons injured without their own fault by collisions."

In *Railway Co. v. Eininger*, 114 Ill. 83 (29 N. E. Rep. 196), it appeared that the trial court instructed the jury that, if the injury happened because of there being no flagman at the railroad crossing at Twenty-fourth street, to give warning to those about to cross the street and railroad track of the approach of the train of cars to the crossing, contrary to the city ordinance, then the plaintiff was entitled to recover. The evidence upon the part of the defendant showed that at the time the plaintiff was struck he was traveling along and upon the railroad right of way for his own convenience. It was said by the court that—

"Under such circumstances plaintiff was not a lawful traveler upon the highway. To such an one the railroad company does not owe the duty in respect to a flagman. Flagmen are for the protection of persons crossing railroad tracks, and are not for the benefit of persons walking along and upon a railroad track, employing it as a foot-path. This instruction was calculated to mislead in this respect, and should not have been given."

In *Elwood v. Railroad Co.*, 4 Hun, 808, it appeared that defendant's passenger train stood at its depot, in front of the platform for the use of passengers. The deceased (plaintiff's intestate) approached from the opposite side, without the knowledge of defendant or its employés, got upon a car from the side opposite the depot platform, found the car locked, got off from the platform of the car on the side from which he had approached it, and undertook to walk between the tracks to the end of the train, without looking behind him. He was struck by a working train approaching him from

behind, and killed. It was held that the negligence of the intestate contributed to the injury; and that the fact that the working train did not give the signal required by statute on crossing a street before reaching the depot was not an act of negligence towards the intestate, who was not on the street, or where he had any business to be.

In *Bell v. Railroad Co.*, 72 Mo. 50, it appears that the court below gave the following instructions to the jury:

" It is the duty of those in charge of a locomotive and train of cars in approaching the crossings of the public streets to commence ringing the bell or sounding the steam whistle at the distance of 80 rods therefrom, and to keep ringing the bell continuously, or sounding the steam whistle at intervals, until the train shall have passed over such public street; and if the jury believe from the evidence that in this case, as ·the train approached and passed over a public street in the town of Meadville, the person in charge thereof did not ring the bell or blow the whistle as above required, and that the boy, Athen Bell, was struck by the locomotive and killed by reason of said omission, and without fault on his part, then the jury will find their verdict for the plaintiffs."

The court in speaking of these instructions, said:

"The third instruction is also objected to on the ground that it had nothing to do with the case. We concur in this view, although its impropriety alone would scarcely justify a reversal. The statute which requires the bell to be rung or the whistle sounded was for the benefit of persons at the road crossing or approaching it; but the boy killed· in this case was not on the road or at the crossing, but 60 feet west of it."

In *Railroad Co. v. Feathers*, 10 Lea, 103, the action was brought by the husband to recover damages for injuries received by the wife by reason of her horse being frightened by a train on defendant's track. She was riding her horse on a public highway parallel with a railroad, which was crossed by another highway. The

noise of a passing train frightened her horse, which threw and injured her. It was held that the statute of Tennessee does not impose the duty on the railroad company to ring the bell or sound the whistle for the protection of any persons except those crossing or about to cross the railroad track on a public highway. Subsection 2 of the act provides that signs shall be placed by the overseer of any public road at crossings, and marked, "Look out for the cars when you hear the whistle or bell." Subsection 3 provides: "On approaching any crossing so distinguished, the whistle or bell of the locomotive shall be sounded at the distance of one-fourth of a mile from the crossing, and at short intervals till the train has passed the crossing." See, also, *O'Donnell v. Railroad Co.*, 6 R. I. 211.

The law is therefore well settled that a traveler upon the highway has a right to assume that a railway company will thus perform its statutory duty; and one on a highway, when he approaches a railroad crossing and can neither see nor hear any indications of a moving train, is not chargeable with negligence for assuming that there is no train sufficiently near to make the crossing dangerous. One in such a position has a right to assume that a railroad company in handling its cars will act with appropriate care, and that the usual signals of approach will be reasonably given. The learned circuit judge, in the present case, by the admission of testimony, the refusal to charge as requested, and in the charge as given, laid down the rule as above stated, and held the defendant to the same degree of care as if the plaintiff had been on a public highway; and not only that, but he gave to the plaintiff all the rights which pertain to one approaching a track on a public highway, and applied the rule that the plaintiff had the right to rely upon the defendant's giving these signals at Beck's crossing,

as well as at the crossings put in by Chapman. The theory of the plaintiff upon which the case was tried was that defendant omitted to give these danger signals at Beck's crossing, and that such omission was the cause of the injury. This was the theory upon which the court submitted the case to the jury. Upon the trial the court remarked to counsel—

"I suppose it is the theory of the plaintiff that they did not even do that [give the signals] for a mile distant from where he was working."

If this can be claimed as negligence as matter of law, and for the reason that the statute requires such signals to be given, then at every farm crossing, or at any other place where people may lawfully work upon or cross a railroad track, such signals must be given at the nearest highway crossing, and a failure to do so would be negligence, which any party injured might allege as a ground of action. This question has never before been presented to this Court. After a full review of the cases arising in the courts of other states under somewhat similar statutes, it appears that the whole weight of authority is against the claim made by plaintiff's counsel. In fact, but one case has been found (and I doubt if any other can be found) where the court of last resort of any state has given such a construction as claimed here to a statute similar to ours. On the contrary, the courts of New York, Rhode Island, Massachusetts, and other states, where the question has been passed upon, have uniformly held that the statute can be invoked only in aid of those actually upon the highway. The case referred to as holding a contrary doctrine is *Cahill v. Railway Co.* (Ky.), 18 S. W. Rep. 2, in which the rule is laid down that—

"Persons lawfully using a private crossing in the vicinity of a public crossing are entitled to the benefit

of signals which they know it is the duty and custom of the railroad to give at the public crossing."

This case has been called to my attention since the argument of the present case, and fully sustains the claim made by plaintiff's counsel. The learned judge who wrote the opinion does not cite a single case to sustain the doctrine laid down by him, but contents himself with a statement from 4 Amer. & Eng. Enc. Law, p. 927, that—

"There is conflict of authority on the question; the doctrine of some of the courts being that only travelers on a highway or street approaching or using a crossing can complain of omission to give required signals, while by others it is held that all persons in the vicinity of a public crossing, whether intending to use it or not, are entitled to the benefit of signals, and have a right to rely upon their being given."

An examination of the cases cited by this author as supporting the last proposition will show that there is no conflict of authority in the cases upon the proposition that one who is not traveling along or in the highway at the time of the injury complained of cannot invoke the aid of the statute; and the only disagreement between the courts of the several states has been whether these statutes applied to others than those on the highway who were crossing or about to cross the railroad track. I do not think that the author intended to be understood that there was a conflict of opinion on the question whether a person who was not on the highway at all at the time of the injury could invoke the aid of the statute, but that the disagreement had been whether these statutes applied only to persons who were on the highway, and actually crossing or attempting to cross the railroad track, or could aid one who, though on the highway, was not crossing or attempting to cross the

track, but traveling along near the crossing; as, for instance, the cases where recovery has been permitted for frightening horses, some of the courts holding that the statute was intended to prevent only actual collisions. Our statute requires the ringing of the bell or sounding of the whistle at least 40 rods before the crossing is reached. This fixes a reasonable distance for warning to be given before the train reaches the highway crossing; and it cannot be assumed that the Legislature intended that one at any other place than on the highway might claim the right to have it sounded; and as to such a person, neither at common law nor under the statute, is any duty fixed upon the railroad company to ring the bell or blow the whistle at least 40 rods before the highway crossing is reached.

Upon the second proposition it is claimed that, if the defendant company consented to the placing of those crossings there, and knew that logs were being hauled along and across its track, it was defendant's duty to give some warning of the approach of its trains, either by ringing the bell or blowing the whistle. It is undoubtedly true that, where a railroad company invites parties to bring freight to it, while so doing it owes the duty of reasonable care, the same as a person who expressly or by implication invites persons upon his premises assumes the duty of warning all who may accept the invitation of any danger in coming of which he knows, but of which they are not aware. It appears, however, that the plaintiff knew of the running of trains over this road. He knew of the regular passenger trains, the freight trains, and the irregular running of this log train. He knew a train might pass there any moment. He looked for one, stopped his team, went forward of the horses, and claims he looked and listened. It is

difficult to discover in what the defendant company was negligent. If it was not called upon to ring the bell or blow the whistle at Beck's crossing, so far as the plaintiff was concerned, what duty did it neglect? What duty did it owe to the plaintiff? The claim is made that, if the company was not called upon to ring the bell or blow the whistle at Beck's crossing, it was called upon to give these danger signals at the crossings made by Chapman, or to do some other act for the protection of the plaintiff. Admitting that the plaintiff was rightfully upon defendant's grounds, placing these logs there, and that Chapman had been permitted to place these crossings for the purpose of enabling the plaintiff to haul the logs over, yet the defendant was under no obligation to run its trains other than in the ordinary way. If it was the duty of the defendant to have given these danger signals at this point because the plaintiff may have been about to haul logs across the track, it might as well be held the duty of the company to give these danger signals at every farm crossing or other point on its road where people are permitted to cross the track or travel along it as a foot-way. Persons so using the railroad track have no right to claim that the company shall give danger signals at such points. It would be requiring of railroad companies a duty which would be impossible of observance at all times. Highway crossings are very easy to be discovered by those in charge of the engine. Sign-boards are erected, and the engineer and fireman get familiar with their location. At other places along the route of the road, such as farm crossings, and places where men may be at times temporarily engaged, or where a foot-way is used by permission, there may be no distinguishing marks. New men may be upon the engines. The work may have just commenced, and the place not known to those in charge of the engine or

train. If these signals were to be required of this log train, they would be required of the freight and passenger trains, and the company would have to respond in damages if they were not observed. I can discover nothing in the case which shows any neglect of duty on the part of the railroad company or its servants. In fact, the plaintiff testifies that he relied upon the signals at Beck's crossing. He does not claim that the company had been accustomed to give any signals at the Chapman crossings, or that he in any manner relied upon its giving such signals. It is apparent that the engineer and fireman on the engine did all in their power to prevent the accident as soon as the plaintiff was discovered on the track.

In *Sutton v. Railroad Co.*, 66 N. Y. 246, the plaintiff's intestate was on the track of defendant company, not on a public highway. He was not a trespasser there, but there by license of defendant. It was said that, in order to recover, some breach of duty on the part of the defendant must be shown. The claim of negligence was in letting some loose cars back upon the plaintiff's intestate without warning of danger. It was held that no negligence was shown.

I think, also, that the plaintiff, by his own showing, was guilty of the grossest carelessness. He admits that he stopped one or two horses' lengths from the track. He went in front of his horses, and says he looked and listened, but that the snow was blowing so that he could not see more than three or four rods up the track. He went back and started his team, which took from one to two minutes. He stepped upon one of the logs, and drove upon the track. He did not stop when the horses reached the track, though a few minutes before he was looking for a train. The situation there, considering the blowing of the snow, was such as required the greatest

care on his part. Not only his own safety, but the safety of the persons who might be upon the passing train, required this. He should have stopped when his horses reached the track, and, before driving them onto the track, should have gone forward upon the track, and looked and listened; and, if he could see only a rod or two up the track on account of the blinding snow, he might well have hesitated about driving across with such a load as he had upon his boat. The defendant's requests set out here should have been given.

Some errors are alleged in the admission of testimony, which we do not deem it important to discuss.

For the errors pointed out the judgment will be reversed, with costs, and a new trial ordered.

GRANT, J., concurred with LONG, J.

MONTGOMERY, J. The plaintiff adduced testimony tending to show that he was working hauling and skidding pine logs along the defendant's track, at a point where a crossing had been made over the defendant's track, for the purpose of hauling logs across; that defendant's agents and servants knew of this track, and that it had been in use for some three or four weeks by plaintiff and others, and that the defendant's trains had daily passed over this portion of the road. The testimony also showed that there was a public highway crossing about three-quarters of a mile from where the plaintiff was injured, known as "Beck's Crossing." The plaintiff, being upon this temporary crossing with a boat load of logs, drawn by a span of horses, having gone upon the track, as he claims, after stopping to look and listen, and not being able to see any train coming, was struck by the locomotive of a log train on the defendant's road, and received injuries, for which he recovered damages. The evidence also showed that the day was

stormy, snow flying in the air, and that it was difficult to see any great distance.

Two grounds of negligence were alleged against the defendant, and, under the instructions of the circuit judge, the jury were permitted to find against the defendant upon either ground. The first ground of negligence averred was the omission to ring the bell and blow the whistle at the private crossing. The learned circuit judge instructed the jury:

"If this crossing, testified to by Chapman as having been made by him for the purpose of use in the hauling of those logs, if it was made with the knowledge and consent or acquiescence of the defendant railroad company, and they knew * * * that it was to be used, and was being used, as a crossing, the law would impose upon them the duty of giving such warning by giving signal,. either by ringing the bell or blowing the whistle, as would fairly warn people in the use of it of approaching trains; and if they failed to do so it would be negligence. upon their part."

The second ground of negligence relied upon was the failure of the defendant's agents to blow the whistle for Beck's crossing, as required by statute.

It was clearly error for the circuit judge to instruct the jury, as he did, that the failure to give a signal of the approaching train at the private crossing was negligence as matter of law. *Railroad Co. v. Dill*, 22 Ill. 264; Rorer, R. R. 1012. It was claimed by the plaintiff that. the use of this private crossing was such as implied an invitation on the part of the railroad company, or, at. the least, amounted to a license, to use it for a crossing. But, if so, it was a limited license, the limitations being understood as well by the plaintiff as defendant's servants. The plaintiff's testimony tended to show that the defendant's train passed this point every day at about the hour of this accident, and that there was no custom of giving any signal at such private crossing. How, then,

could the plaintiff be permitted to maintain that he was there under an invitation to cross, with the assurance that warning would be given? On the contrary, if there had been no custom to give such warning, the plaintiff must have been fully assured that no such duty had been undertaken by the company, and, this being so, it should be held that the company had never invited or licensed the plaintiff to make use of this crossing in any such sense as to have assumed the burden or duty of running its trains past this point in any other than the usual way. A discovered and known omission of an alleged duty cannot constitute a proximate cause of an injury which results to one who proceeds, with knowledge that such alleged duty will not be observed, to perform an act which is only safe on the assumption that such duty would be attended to. As is very tersely stated by Mr. Bishop, in his work on Non-Contract Law: "If one dis-covers another to have been negligent, he must take precautions accordingly." Bish. Non-Cont. Law, § 466; *Cooper v. Railroad Co.*, 44 Iowa, 134.

The question remains as to whether the failure of the defendant to give the statutory warning at Beck's crossing was such a neglect of duty as would, in the absence of contributory negligence on his part, entitle the plaintiff to recover. Section 3375, 3 How. Stat., provides as follows:

"A bell of at least thirty pounds weight, and a steam whistle, shall be placed on each locomotive engine, and said whistle shall be twice sharply sounded at least forty rods before the crossing is reached, and after the sounding of the whistle the bell shall be rung continuously until the crossing is passed, under a penalty of one hundred dollars for every neglect; * * * and the company shall also be liable for all damages which shall be sustained by any person by reason of such neglect."

It is contended on behalf of the defendant that the

omission of this duty cannot support an action on behalf of one who was not injured at the crossing; and there are not wanting cases which sustain this contention, under statutes somewhat similar to the one under consideration. We do not, however, think that this is the proper construction to be placed upon this statute. The statute imposes a positive duty upon the railroad company to sound its whistle and to ring its bell at a certain point. It is a well-known fact that not only those about to cross the railroad track, but those in the immediate vicinity, lawfully there, are frequently induced to rely upon the performance of this statutory duty. If they do so, and without fault of their own suffer an injury, we see no reason why the statute should not be so construed as to protect them. We think the true construction to be that, while a failure to give a signal required by law will not avail a trespasser in an attempt to charge the road, one lawfully in a position where such negligent omission may constitute the direct and proximate cause of the injury to him is entitled to aver such negligent act as the basis of the action.

In *Ransom v. Railway Co.*, 62 Wis. 178 (22 N. W. Rep. 147), it was held that the failure to give the crossing signal is a negligent act, of which one may complain who is injured by reason of such failure while driving parallel to the track near the crossing, from the fright of his horses.

In *People v. Railroad Co.*, 25 Barb. 199, it was held that the hazards to be provided against by the enactment of such a statute are twofold: *First*, the danger of collision at crossing; *second*, that of damage by frightening of teams traveling upon a public highway near the crossing.

In the late case of *Cahill v. Railway Co.* (Ky.), 18 S. W. Rep. 2, it is distinctly held that persons lawfully

using a private crossing are entitled to have the benefit of signals which they know it is the duty or custom of the railroad to give at a public crossing.

In *Norton v. Railroad Co.*, 113 Mass. 366, it was said:

"When the legislature has by statute directed that at particular points of their road they shall take especial precautions to notify those using the highways of the approach of a train, we cannot say that such precautions were intended solely for the benefit of certain travelers, even if they constituted the most numerous class, or that most liable to be endangered, if there were others also rightfully using such highways who would be liable to be injured by the neglect of them."

In *Wakefield v. Railroad Co.*, 37 Vt. 330, it was said:

"While such accidents are, in the main, likely to happen to persons approaching and about passing such crossing, yet they are not confined to such persons; and we think it would be an unwarrantable restriction of this provision of the statute to hold that the duty thereby imposed has reference only to persons approaching or in the act of passing the crossing. In our judgment, that duty exists in reference to all persons who, being lawfully at or in the vicinity of the crossing, may be subjected to accident and injury by the passing of engines at that place."

The gist of each of these decisions quoted from Massachusetts and Vermont is that one lawfully in a position in which the failure to observe the statutory duty might work him an injury has the right to complain of such failure on the part of the company.

An attempt has been made to distinguish those of the cases cited which hold that one upon a public highway, though not intending to cross, may rely upon the performance of the statutory duty by the company, and the case at bar; but, in my judgment, the cases are not to be distinguished in principle. The only possible ground upon which the company is held liable for this omission

of duty to one traveling in a public highway parallel to the railroad is that he is lawfully there, and, having knowledge that the railroad company is required by law to give these statutory signals, he is justified in relying upon the performance of that duty, and that the omission to perform the duty is the proximate cause of the injury resulting to him. So, in the case at bar, the plaintiff occupied such a relation to this defendant company. He was lawfully upon this crossing. He knew that the engineer was required by law to sound his whistle, and he relied upon the performance of that duty. The proximate cause of the injury might very properly have been found by the jury to have been this neglect of duty. Every element that is present in an action by one upon the public highway, not intending to cross, is present under the plaintiff's theory in the present case; and the important question presented is whether we will follow the line of decisions which limits the liability of the company for injuries resulting through its failure to give signals to those about to cross or actually crossing the track at the public highway crossing. We think the better rule is that laid down by the Wisconsin and Kentucky courts, in the cases of *Ransom v. Railway Co.* and *Cahill v. Railway Co.*, above cited.

MORSE, C. J., and McGRATH, J., concurred with MONTGOMERY, J.