## The American Merchants' Union Express Company v. Henry T. Phillips and another.

*Common carriers: Express companies: Live pigeons.* Whether live pigeons would be regarded in any case as common-law freight for an express company conducting as common carriers:—*Quære?*

*Freight: Common carriers: Live animals: Charge to the jury.* In an action for freight for carrying live pigeons, where neither the pleadings, nor any thing

in the evidence on the trial, indicated in what character the plaintiffs conducted the carrying, the refusal of requests to charge which seek to avert liability for injury to the pigeons carried, upon an assumption that common carriers are not liable for such injury to live animals in the course of transportation, is not error.

*Exceptions: Preliminary questions.* An exception which depends upon a preliminary question for the solution of which the record affords no data, raises no point to be considered.

*Negligence: Direct proof.* The modification, in such an action, of a request to charge that there must be *direct* proof of negligence or want of care in the transportation to warrant a recoupment, by dropping the word "direct," where the charge otherwise properly and correctly presents the questions of negligence and the burden of proof, is held not error.

*Negligence: Feeding and watering live pigeons.* The refusal to charge in this case, that the plaintiff was not required to feed and water the birds, in the absence of an agreement to do so, and the submission of the fact of not feeding and watering to the jury to be considered as one among others going to show actionable neglect, held not error.

*Express companies: Live pigeons: Negligence.* Whether an express company transporting live birds, either as common carriers or as ordinary carriers for hire, would not, in the absence of express agreement to do so, be impliedly bound to supply them with food and water, so far at least as was essential to their preservation :—*Quære?*

*Ordinary bailees for hire: Negligence.* Under the pleadings and evidence in this case, which do not disclose the character in which the freight sued for was earned, the plaintiff is not entitled to complain of being held to the liability at least of ordinary bailees for hire.

*Technicalities: Waiver.* Where parties elect to go to trial upon general and informal allegations and to carry on their controversy upon some point or points of difference tacitly understood, the judgment will not be reversed upon technicalities, where it appears that the merits were fairly tried.

*Heard May 12. Decided July 14.*

Error to Wayne Circuit.

*John J. Speed,* for plaintiff in error.

*George H. Prentis,* for defendants in error.

GRAVES, CH. J.

The company sued in assumpsit before a justice, to recover pay for the carriage of a quantity of live pigeons. The defense actually interposed was a counter claim that the plaintiffs misconducted in the affair, and thereby caused the defendants damage.

The pleadings appear to have been very informal. The printed record represents that the declaration was merely

"for charges due for freight on twenty coops of pigeons, carried by plaintiffs at the request of defendants, from Montague, Michigan, to Detroit, and delivered to defendants; and claimed damage twenty dollars," and that the defendants pleaded "the general issue" and "gave notice of set-off and recoupment," and in compliance with a demand for a bill of particulars of the set-off, filed a statement "that the pigeons were not delivered in good order." It will thus be seen that neither party in the pleading indicated whether the particular transaction was undertaken or supposed to be undertaken by the plaintiffs as common carriers or as ordinary bailees for hire. They neither claimed to have proceeded in any specific character, nor were they charged with having done so. They recovered before the justice, and the defendants appealed, and in the circuit court the parties went to trial before a jury on these indefinite allegations.

In the progress of the trial the actual issue was developed. The parties elected on what ground the case should be rested. They seem to have made no question whatever, until the evidence was closed, about the character in which the company acted, but directed their attention exclusively to the imputed fault in the carriage. The whole proof appears to have been aimed that way, and other matters seem to have been pretermitted as not in contest. The fact of carriage was not disputed at all, and there was no disagreement about the sum charged. The evidence showed that there was much delay along the route adopted, on account of the misconnection of trains, and that the birds were not properly fed and watered, if at all, and were not handled and treated as they should have been. When they reached Detroit a great many were dead.

After the evidence was all in, and when the court came to charge, the company advanced the claim that they worked as common carriers, and that in view of the principles laid down in *McDonough's case, 21 Mich., 190* and *Perkins' case, 25 Mich., 329*, touching the liability connected with the carriage of live animals, they were entitled to the charges

prayed by their first, second and fourth requests. This position is still maintained. Without pausing to decide whether live pigeons would or would not be regarded in any specific case as common-law freight for an express company conducting as common carriers, and without stopping to criticise the broad terms of these requests, it is very clear that their refusal will not, in the actual state of this case, maintain any exception.

There is no basis in the record to uphold the theory they involve. We have no data to justify the assumption that the plaintiffs worked in this business in the character of common carriers, and if a finding that they did so would be sufficient to sustain the exceptions, a point not considered, there is nothing to authorize it. We cannot find error when in order to do so we have something to predetermine for which the record affords no warrant. The matters in the case are quite consistent with the supposition that in fact the plaintiffs assumed to act in this instance as ordinary bailees for hire, and if they did not, but in the character of common carriers, and thought that circumstance of importance to avert liability, it was incumbent upon them to see to it that in some form the evidence of their true character was brought into the record. The exceptions founded on the exclusion of the first, second and fourth requests do not raise the points contemplated by them, or any points upon the merits.

Complaint is made of remarks of the court on refusing to give these and other requests. They were calculated, it is said, to lead the jury to understand that the plaintiffs subjected themselves to the extreme duty and liability of common carriers, and were responsible to the same extent, and for the like risks.

The rulings made and remarks in question are not so understood. The whole proceedings must be taken together, and as they occurred before, and appeared to the jury. The pleadings and evidence, as before stated, were silent respecting the character assumed by the plaintiffs.

The nature of the bailment was passed over, and the parties proceeded to get at the actual facts of the transit, the loss, and what caused it. The defendants contended that the loss was occasioned by misconduct, by negligence on the part of the plaintiffs; and the plaintiffs, by their sixth request, asked the court to charge "that the jury must find there is *direct* proof of neglect or want of care in the transportation of this freight, the burden of proof being upon the defendants, in order that the defendants may recoup, and it is not sufficient that the jury find that other like freight has been transported without loss." In response to this the court said, "that is true, you must be satisfied, by the proof in the case, that the express company has been negligent, and that by this negligence the loss occurred." The plaintiff's counsel then interposed and remarked: "I mean *direct* proof." Thereupon the court subjoined: "They must be satisfied from the proof. The burden of proof is upon the defendants to show that, in order that they may recoup. The recoupment in this case is the loss of the birds. If you should find that the express company was negligent, and in consequence of that the birds died, the defendants would be entitled to recoup the value of the birds. That would be what we understand as an offset against the freight, and you will give your judgment for the defendants for the balance found due between the parties. If you should find that that was not the case,—that the express company were not at fault,— of course your judgment must be for the plaintiff, for the amount which you find to be due." The requests which assumed that the plaintiffs acted in this transaction as common carriers had been explicitly refused, and it is quite obvious that the remarks referred to by the plaintiff's counsel, and most of which have been quoted, were intended, and must have been understood as meant to keep the attention of the jury to the crude issue of fact on the evidence respecting negligence, and not to suggest that the plaintiffs were exposed to the rate of liability assigned by the law to

common carriers. If the word "*direct,*" as it occurred in the request, was meant to be dropped, the design was not objectionable. As used in the request, it was likely to mislead.

The third and fifth of the plaintiff's requests were given.

The seventh and last desired a charge that the company were not required to feed and water the birds, in the absence of an agreement to do so. This was refused, and the jury were allowed to consider the fact of not feeding and watering as one among others going to show actionable fault. The claim of negligence in this case, and especially in view of the cast the parties gave to the litigation, was one very suitable to be decided by a jury on all the facts. The imputed grievance, in its own nature and in the circumstances about it, was marked by specific peculiarities, and it could hardly be dealt with in any other way. And the plaintiffs themselves seem to have been of that opinion, since in their sixth request, before quoted, they contemplated going •to the jury on the evidence of negligence. Considering the color of the transaction, the connection and import of the facts and the shape given to the litigation by the parties, the court was justified in leaving the question to the jury.—*Detroit & M. R. R. Co. v. Van Steinburg, 17 Mich., 99; Lake S. & M. S. R. R. Co. v. Miller, 25 Mich., 274; Maynard v. Buck, 100 Mass., 40; Viner v. Steamship Co., 50 N. Y., 23; R. R. Co. v. Stout, 17 Wall., 657; Gee v. The Metropolitan R. Co., L. R., 8 Q. B., 161, 5 Eng. R., 169; Beck v. Evans, 16 East, 244; Martin v. The Great Northern Railway Co., 30 E. L. & E., 473.*

The omission to feed and water the birds when under the sole care and charge of the plaintiffs during the length of time which elapsed, and in the existing state of things, was closely connected with the other facts, and indeed one of the combination of facts bearing on the question of negligence, and it is not perceived how it could be rightly separated and submitted under a distinct and positive direc-

tion which would preclude it from having any influence on that question. There was no error in the course pursued. If it was proper, as it is deemed to have been in this case as made up and tried, to submit the question of negligence to the jury, it was certainly proper to submit all the facts concerning the care bestowed on the specific freight by the company, and the actual measure and extent of that care —*Smith v. Condry, 1 How., 28, 35.* How such a fact standing alone and dissociated from others would require to be viewed; whether, as an abstract proposition, an express company transporting live birds, either in character of common carriers, or in that of ordinary bailees for hire, would, in the absence of express agreement to do so, be impliedly bound to supply them with food and water so far as essential to their preservation, or to any other extent, is not now a point to be determined. It is perhaps not difficult to conjecture what determination would be reached in the mass of cases. Every court would struggle to make the prevention of cruelty a duty of the party able to command the means and having exclusive opportunity. But cases may be imagined in which it would be hard to say on which party the duty rested.

In suing in the way they did, the plaintiffs affirmed in substance, that in carrying the birds they acted as *hired carriers,* and by this they were bound. They did not, however, affirm in terms, whether they so acted as *common carriers* or as *ordinary bailees for hire.* Hence they did not certainly put themselves on the *record* as *common carriers.*

The defendants, in bringing forward their counter claim in the nature of a cross-action, were equally inexplicit. No *evidence* was given that the plaintiffs acted as common carriers in regard to this transaction, or, even that their general calling was that of common carriers; and both parties passed by that subject and applied themselves to the question of negligence on the facts.

Under these circumstances, and in view of their undertaking as they chose to lay it, the plaintiffs cannot complain

in being held to the liability at least of ordinary bailees for hire.—*Bancroft v. Peters, 4 Mich., 619; Ross v. Hill, 2 Com. B., 877 (52 E. C. L.); Powers v. Davenport, 7 Blackf., 497; Howe v. Cook, 21 Wend., 29; Amer. note to Coggs & Bernard, 1 S. L. C., 283-284; 4th Am. Ed. Broom's Com., 822; Legge v. Tucker, 38 E. L. & E., 389.* And it is very clear that there was evidence for the jury of the misconduct and want of care for which the law holds such bailees responsible.—*Story on Bailments, § 457; Maynard v. Buck, 100 Mass., 40; Parsons' M. L., 196 and notes.*

The court was not requested, and did not attempt to define the degree of care demandable of the plaintiffs, and no question is raised on that ground. The whole evidence was submitted broadly to the jury on the question of negligence, and in view of the facts, no reason is perceived for thinking that the verdict was a miscarriage. Where the parties elect to go to trial upon general and informal allegations, and to carry on their controversy upon some point or points of difference tacitly understood, we are extremely averse to the application of technical rules, and are not disposed to favor a reversal, if satisfied that the merits were allowed to be fairly tried.—*Willard v. Bridge, 4 Barb., 361; Stillson v. Sanford, 3 Caines, 174; Kline v. Husted, ib., 275.*

We cannot say in this case that the plaintiffs were prejudiced.

The judgment should be affirmed, with costs.

COOLEY and CAMPBELL, JJ., concurred.

CHRISTIANCY, J., did not sit in this case.