HENRY A. SMITH AND JOHN Q. ADAMS v. THE MICH-
IGAN CENTRAL RAILROAD COMPANY.

*Carriers—Live stock—Death from want of care—Liability of*
*bailee—Contract—Pleading.*

1. Where a railroad company accepts horses for shipment over
   its road under a contract which provides that they are to be
   loaded, unloaded, fed, watered, and otherwise cared for, while
   in the cars, by the shipper or owner, and at his expense and
   risk, the company, as a bailee for hire, having control of the
   cars in which the horses are placed, is bound at least to fur-
   nish the shipper an opportunity to give the animals the care
   which they may require.

2. The provision that " the stock is to be loaded, unloaded, fed,
   watered, and otherwise cared for, while in the cars, by the
   shipper or owner," does not mean that the duty is to be per-
   formed by the shipper while the train is in motion, and with-
   out being afforded an opportunity by the company to perform

it, but, if said provision should be given any force, it creates a very fair inference that the company will afford the shipper the opportunity to perform the duty which it has seen fit to impose upon him.

3. The fact that the declaration in a suit by the shipper to recover the value of one of the horses, which he claims died by reason of want of care, feeding, and watering, charges both delay in transporting the horses, and failure to furnish the shipper an opportunity for feeding and watering them, will not warrant the contention that, as neither of said causes would alone have occasioned the death of the horse, it is necessary for the plaintiff, not only to prove both, but to show that the defendant omitted to perform its duty to the plaintiff in both particulars, and therefore, if there is no liability on its part for delay of trains, that one of the essential elements of the proximate cause of the death of the horse cannot be charged against the defendant, and the case must fail.

Error to Saginaw. (Gage, J.) Submitted on briefs March 8, 1894. Decided April 17, 1894.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Hanchett, Stark & Hanchett,* for appellant, contended:

1. The plaintiffs sought to charge the defendant with the performance of the duties of a common carrier, and in making their proofs they ignored the contract which was actually made, and which defined the rights and duties of the parties, and proved merely the delivery of the stock to the defendant, claiming that an implied contract thereby arose by which the defendant assumed the duties and liabilities mentioned in the declaration,—in other words, the duties and liabilities of a common carrier of live stock. No proof was offered by the plaintiffs that the defendant was a common carrier of live stock. Until this had been proved, the mere delivery of the horses by the plaintiffs to the defendant did not create the relationship of shipper and common carrier; citing *Railroad Co. v. Perkins,* 25 Mich. 329, 333; and the fact that defendant carried live stock for all persons applying for such service, under certain terms and qualifications of liability, does not make it a common carrier of live stock; citing *Railroad Co. v. McDonough,* 21 Mich. 165, 197.

2. Under the declaration, the burden was on the plaintiffs to prove
   that the defendant received these horses for shipment under
   such circumstances and conditions that the law would imply
   the assumption by the defendant of the duties declared upon,
   viz., that it would carry the horses safely, without unreason-
   able delay, would give them such attention as was necessary
   during transit, and would deliver them in good condition to
   the plaintiffs at their destination; citing *Railroad Co. v.
   McDonough*, 21 Mich. 165, 188, 204; *Railroad Co. v. Perkins*,
   25 Id. 333–335.

3. If a defendant is alleged and proved to be a common carrier,
   the law itself supplies proof of the contract, so far as regards
   the extent or degree of his liability, but, if he is not a com-
   mon carrier, the terms of his undertaking must be proved by
   the plaintiff; and in either case, where there is an express
   contract, that alone must be relied on, and no other can be
   implied; citing 2 Greenl. Ev. § 210.

*Frank E. Emerick,* for plaintiffs.

MONTGOMERY, J. This is an action on the case. The
declaration alleges that the defendant accepted from plaint-
iffs 15 horses to be transported for hire and reward from
Gaylord to Saginaw; that it became the duty of the defend-
ant to take due and proper care of the same, and carry and
convey the same with reasonable safety and dispatch, and
to safely and securely and without unnecessary delay deliver
the horses at the city of Saginaw; that defendant neg-
lected its duty; that it left the car conveying the horses
on the side track of defendant's railway at West Bay City,
from 1 o'clock in the morning until 10 o'clock in the
forenoon; that the said plaintiffs, on discovering that the
defendant intended leaving the car standing on the said
side track for said length of time, requested the defend-
ant to move the car to a place in defendant's grounds
where the horses could be fed, watered, and cared for, and,
if necessary, temporarily removed from said car; and that
defendant refused and neglected to do so, or to permit said
horses to be fed, watered, and cared for, or to feed, water,
and care for said horses, or to allow said horses to be taken

out of said car, and, without cause or reason therefor, caused said car, with said horses therein, exposed and uncared for, to stand and remain said unreasonable period at said West Bay City.

The evidence adduced on the trial showed that the horses were shipped from Gaylord, after having been properly fed and cared for, on the 29th of April; that they were placed in the car in good condition; that the car was loaded at 9 o'clock in the morning, and, if the trains had been running on their regular time, would have reached Saginaw at 9 o'clock in the evening of the 29th. But the train to which the car was attached missed its connection at Grayling, so that it did not reach West Bay City until 1 o'clock A. M. of April 30. It was there sidetracked and remained at West Bay City until 12:35 P. M. of the 30th, when it was attached to a freight train, and taken to its destination, arriving at Saginaw at 1:55 P. M. The plaintiffs offered testimony tending to show that, upon the arrival of the car at West Bay City, John Welsh, an employé of the plaintiffs, in charge of the stock, went to the office of the yard-master, and was told that the horses would be sent forward to Saginaw in about an hour; that, at the expiration of the hour, Mr. Welsh again inquired of the yard-master, and was then informed that the car could not go out until the regular train, which left about 11 o'clock in the forenoon; that Welsh then told him that the horses had been in the car about 24 hours without food or water, and asked the yard-master if there was any place he could feed and water them; that the yard-master replied, "There is water down the track there," and Welsh replied that he could not carry the water and water them in the car, and requested the yard-master to move them down to where the water was. The plaintiffs also offered testimony tending to show that there would not be room in the car for the man to get in to water the horses, and that there was no way of

watering and feeding them without taking them from the
car; that there was no platform or shute at the place where
the car was left upon which the horses could be removed
from the car, although there was a platform with inclined
plank at the freight depot near by in the yard, for the
purpose of unloading and loading horses.

The evidence showed that, at the time the cars were
shipped, the contract was signed by the plaintiffs' agent,
which provided that—

"The said Michigan Central Railroad Company shall
not be liable for any loss or damage which the shipper or
owner of said live stock may suffer by reason of delay of
trains, or by escape or loss of any stock from cars, or by
reason of injuries to animals arising from the bruising or
wounding themselves or each other, or from crowding in
the cars, or from improper loading, or by reason of any
loss or damage arising in the loading or unloading of said
stock, or by reason of any other injuries or damage hap-
pening to said stock while in the cars of said company,
except such as may arise from a collision of the train or
the throwing of the cars from the track during transpor-
tation, and shall in no case be responsible for an amount
exceeding $100 for each or any animal transported. Said
stock is to be loaded, unloaded, fed, watered, and other-
wise cared for, while in the cars, by the shipper or owner,
and at his expense and risk. No liability of said company
shall extend beyond its own line of road."

Plaintiffs also offered testimony tending to show that,
because of the neglect and want of care, one of the horses
died shortly after being received at Saginaw, and that $16
was paid to a physician for caring for the horses because
of their condition, induced by the alleged negligence of
the defendant. Under the instructions hereinafter referred
to, the plaintiffs recovered a verdict for $100, the value
of the horse that died, and for $16, paid to a physician
in caring for the injured animals.

The defendant brings error, and alleges, first, that the
declaration is defective, in that it does not correctly state

the relationship of the parties and the duties devolving upon the defendant from such relationship. We think the declaration sufficient. The contract relations between the parties were but material for the purpose of showing that the defendant became a bailee for the animals for hire. This is shown sufficiently by the declaration. The duty of the defendant resulting from the relation is stated somewhat broadly, but, in alleging negligence, the plaintiffs have proceeded with great particularity, and set forth the precise state of facts which they rely upon, and which are that, after the car had reached West Bay City, the defendant neglected to furnish an opportunity for the plaintiffs to water and care for the horses, and neglected itself to provide this care. If the plaintiffs proved these facts, and proved that they were not themselves in fault, we think that, in any view of the relationship of the parties, the defendant is liable. It is not contended by the plaintiffs that the defendant is a common carrier, but it is insisted, and we think rightly, that the defendant, as a bailee for hire, having control of the car in which the horses were placed, was bound at least to furnish the plaintiffs an opportunity to give the animals the care which they required. See *American Merchants' Union Express Co. v. Phillips,* 29 Mich. 515.

It is also suggested that as the declaration charges both delay and failure to furnish opportunity for feeding and watering the horses, and as neither alone would have caused the death of the horse, it becomes necessary for the plaintiffs, not only to prove both elements, but to show that defendant omitted to perform its duty to the plaintiffs in both particulars, and therefore, if there is no liability on the part of defendant for delay of trains, that one of the essential elements of the proximate cause cannot be charged against the defendant, and the case must fail. We cannot accept this reasoning. If any negligent act of

defendant is charged which, in the conditions existing, was likely to and did result in loss to the plaintiffs, they are entitled to recover, and this though the declaration may have charged other acts as negligent which are either not proven or which may not in law be negligent. The *gravamen* of the charge is that, with the necessary retention of the horses in the car until their arrival at Saginaw, the defendant negligently refused to furnish any opportunity for the horses to be fed and watered, and this, under the charge of the court, the jury must have found was established by the testimony. The court charged the jury as follows:

" Mr. Welsh told us that, when the car arrived at West Bay City, he was of the opinion that the horses needed food and water. The plaintiffs claim that he made a request of the railroad company to place that car in such a position that he could water the horses. In view of the condition of affairs at West Bay City, it must be deemed to be a request to take that car to a point where there was water and where the horses could be unloaded in order to water them. If that request was refused, or if the railroad company, instead of responding to the request, assured him that the cars would start out in a short period of time, so as to make watering and feeding unnecessary, and led him to believe by what they said to him that the train would start on, that he would not have to wait there any great length of time, and you find as a matter of fact, from the evidence in the case, that he made such a request of the company, and that they either refused or neglected or paid no attention to the request, and, in consequence of their refusal or neglect to accede to this request to place the car in a position where the horses might be taken out and cared for, fed, watered, and looked over by the agent in charge of them, and you also find that, in consequence, this particular horse—the gray horse—died in consequence of that horse not having food and water while the car was standing upon the track at West Bay City, and also in consequence of the car being detained or remaining on the track at West Bay City until 12:35 the same day, that those two events resulted in the horse becoming diseased, and, as a result of the disease, he died, the railway com-

pany would be responsible for the damage resulting to the plaintiffs in consequence of the horse's death.    Therefore it is a question of fact for the jury, and I confine it entirely to what occurred at Bay City.    *      *      *      *

"If you find, as a matter of fact in this case, that a request was made by Mr. Welsh of the yard-master, the proper party to look after a matter of this kind, or some one who was in his office, placed there by him to attend to matters during his absence, and that this request was not considered or acceded to, but he neglected to put that car in a position where the horses could be fed and watered that night, and you also find as a matter of fact that failing to do that, and also failing to transport the horses immediately or soon afterwards to their destination, so that they might be fed and watered at their destination, but leaving the car without transporting it until 12:35 the following day, that the two, combined together, standing in the car upon the track, and the horses not being fed and watered, produced the disease that caused his death, then I think the railroad company would be liable, unless you find that the plaintiffs, by their own negligence, contributed to the injury,—the disease of the horses."

Under these instructions, it is clear that the jury must have found that the failure to water and feed the horses was the occasion of the disease, resulting in death, in the sense that but for the failure to water the horses the injury would not have occurred.    The fact that the circuit judge associated with this the attendant circumstances, and treated the attendant circumstances as a part of the cause, wrought no injury to the defendant, and was not only not error, but, we think, proper.    It is clear that failure to water the horses at starting would not be negligence on the part of the railroad company, nor, if the entire time consumed in their transportation were only two hours, would any one contend that failure to furnish an opportunity for watering would constitute negligence on the part of the railroad company.    But the negligence in failure to permit an opportunity to water the horses is shown in view of the fact that the horses had been 17

hours on the road when the request was preferred, and were subsequently detained for several hours thereafter.

The defendant requested the court to charge the jury that the defendant was not legally bound in any way to care for the horses while in transit, and the request for assistance claimed to have been made by Mr. Welsh to the yard-master at West Bay City could not shift the duty to care for the stock on the defendant. We think the request was properly refused. The evidence tended to show that, without having afforded an opportunity for unloading the horses, they could not be fed, watered, and cared for. The provision in the contract that "the stock is to be loaded, unloaded, fed, watered, and otherwise cared for, while in the cars, by the shipper or owner," does not mean that the duty is to be performed by the shipper while the train is in motion, and without being afforded an opportunity by the company to perform the duty. If the provision should be given any force, it creates a very fair inference that the company will afford the shipper the opportunity to perform the duty which it has seen fit to provide shall rest upon him.

It is also contended that the plaintiffs' testimony failed to show due care on the part of Welsh to care for the horses, and that the horses might have been unloaded without moving the car. But we think these questions were fairly questions for the jury, and properly submitted.

An examination of the record convinces us that there was no error to the prejudice of the defendant, and the judgment will be affirmed, with costs.

The other Justices concurred.