LEPARD v. MICHIGAN CENTRAL RAILROAD CO.

1. MASTER AND SERVANT—NEGLIGENCE—PLEADING—DECLARATION —RAILROADS.

A declaration charging a railroad corporation with neglecting (1) to place a steam whistle on its locomotive, (2) to maintain a whistle that could be sharply sounded, (3) to keep the whistle in repair, and (4) to blow the whistle at a certain crossing, as required by 2 Comp. Laws, § 6292, sufficiently sets forth a duty, independent of statute, to place and maintain a steam whistle on the locomotive, in reasonable repair.

2. SAME—PLEADING—FAILURE TO PROVE PART OF DECLARATION.

If the plaintiff alleges in his declaration any act of negligence resulting in injury to him, he is entitled to recover although he charges other acts as negligence which he fails to prove.

3. SAME—RAILROADS—WHISTLE—EVIDENCE.

Evidence tending to show that the whistle gave a peculiar sound, that it sounded as if the steam was low, that the tone was muffled, is insufficient to present a question of fact as to its defective condition, when there was · evidence that the peculiar tone might have been caused by the water foaming in the boiler, or by other equally probable conditions.

4. EVIDENCE—CROSS-EXAMINATION—IMPEACHMENT.

On cross-examination for the purpose of impeachment only, it was competent to ask defendant's engineer, who had taken the stand as a witness for plaintiff and was recalled by de-

fendant as its witness, if he had not admitted that the whistle would not work, and was no good.

5. MASTER AND SERVANT—SIGNALS—STATUTES—WHISTLE.

Employés of a railroad company engaged in work on the right of way are not entitled to maintain an action for negligence of the defendant in failing to sound its whistle at a crossing near their place of work, under requirement of 2 Comp. Laws, § 6292.[1]  Per STONE, MCALVAY, and BROOKE, JJ.

6. SAME.

The violation of a statutory duty gives rise to a cause of action in favor of such persons only as the legislature intended to protect by the statute.  Per STONE, MCALVAY, and BROOKE, JJ.

7. SAME.

The negligence of an engineer, in failing to blow the whistle of the locomotive which he was operating, was the negligence of a fellow-servant of a section hand who was killed by the train.  Per STONE, MCALVAY, and BROOKE, JJ.

Error to Ogemaw; Sharpe, J.  Submitted March 3, 1911.  (Docket No. 188.)  Decided March 31, 1911.  Rehearing denied September 29, 1911.

Case by Hannah Lepard, administratrix of the estate of Richard Lepard, deceased, against the Michigan Central Railroad Company, for the negligent killing of decedent.  Judgment for plaintiff.  Defendant brings error. Reversed.

*Cooley & Hewitt* (*Humphrey, Grant & Baker*, of counsel), for appellant.

*De Vere Hall*, for appellee.

STONE, J.  This is an action on the case for negligence brought by the plaintiff as administratrix of the estate of her deceased husband, Richard Lepard, for damages claimed to have been sustained by the estate, and to have accrued against the defendant for causing the death of said Richard Lepard.

---

[1] On the question for whose benefit signals by approaching trains are required by statute at railway crossings, see note in 17 L. R. A. 254.

The declaration contained but one count.   After alleging that defendant was a railroad corporation operating a line of railroad in this State, the appointment of plaintiff as administratrix; that the line of defendant's railroad crossed a highway at Ogemaw Springs, nearly at right angles, at grade called Ogemaw Springs Crossing; that the injury was caused by a freight train, No. 220, propelled by locomotive engine No. 8,357; that the defendant company, in operating such train, was subject to the requirements and limitations of section 6292, 2 Comp. Laws, regarding the blowing of a steam whistle at highway crossings; and that plaintiff's intestate was at the time employed as a section hand on a five-mile section of said railroad, beginning about a mile south of said Ogemaw Springs Crossing, and extending northerly a distance of five miles from the place of beginning—the declaration averred that under the regulations and limitations of said section of the statute it was the duty of defendant:

(*a*) To place a steam whistle on the locomotive engine.
(*b*) To place a steam whistle that could be sharply sounded on the engine.
(*c*) To place, keep, and maintain a steam whistle that could be sharply sounded on said locomotive.
(*d*) Not to operate such train with a locomotive having a defective, imperfectly constructed steam whistle that could not be sharply sounded at least 40 rods before reaching this crossing.
(*e*) To keep and maintain the whistle in reasonable repair so that it could be sharply sounded.
(*f*) To twice sharply sound the steam whistle on the engine at least 40 rods before reaching Ogemaw Springs Crossing.

The declaration alleged a violation of each of these duties.   It also alleged that defendant owed other duties, as follows:

(*a*) To equip the locomotive with a reasonably efficient steam whistle.
(*b*) To keep the steam whistle in reasonable repair.

(c) Not to operate the train with a locomotive on which the whistle was not maintained in reasonable repair.

(d) To twice sharply sound the steam whistle 40 rods before reaching Ogemaw Springs Crossing.

It alleged a breach of each of these duties, and that the injury happened under the following circumstances: At about 5:30 o'clock a. m. on the 13th day of June, 1909, being Sunday, the sectionmen started north over their section with a hand car. When near the crossing, without signal, notice, or warning, this train with the defective steam whistle suddenly approached the crossing and ran into and collided with the hand car near the crossing, injuring and killing Lepard. The above statement is sufficient to show the issue raised by the declaration.

The plea was the general issue.

In the opening statement of plaintiff's counsel, he used the following language, after referring to said section 6292:

"It is the first contention of the plaintiff that this whistle was not sounded as required by law; * * * that if it had been sounded when those men were at the crossing they would have heard it and known of the approaching train; and that, failing to do that, this right of action accrues to the person standing in the place of the plaintiff in this case. The second contention of the plaintiff in this case is that they did not have a whistle on their engine that could sound; that this whistle was a broken whistle, a defective whistle, a whistle that only corresponded to the escaping steam, that indicates a surplus of steam; that it was not an appliance that could be sounded sharply, as the law calls for; and that, whatever may be the law about the first proposition about the failure to sound it, that the rule as to the second is that the defendant was at fault in sending out an engine so improperly equipped that the whistle could not be sounded, as required by law. And that those two claims of the plaintiff are the ones on which we shall say that the defendant was negligent that morning."

It was conceded on the part of the defendant that the train in question in the case was No. 220, and that the

number of the engine in question was 8,357, and that it was a regular time card or schedule train.

At the close of the plaintiff's evidence, which tended to show the circumstances under which the accident or injury occurred, the following colloquy took place between counsel:

"*Mr. Humphrey:* I want to ask counsel for the plaintiff if they claim any other allegation of negligence against this defendant in the declaration, excepting the blowing of the whistle, or a defective whistle.

"*Mr. Hall:* Yes, we make a claim at this time to the —well, you mean the right to invoke this statute in our behalf as to his failure to blow, or the question of defective whistle?

"*Mr. Humphrey:* Yes.  ·

"*Mr. Hall:* No; that is all.

"*Mr. Humphrey:* Your whole negligence is based on the question of the whistling and the whistle?

"*Mr. Hall:* Well, yes, as I understand your inquiry."

Counsel for defendant then moved the court to direct a verdict in its behalf, among other things, on the ground that the plaintiff could not invoke the protection of the statutory signals at crossings as against the company in favor of Mr. Lepard, who was the company's employé, because the statute regarding whistling at crossings is not for the benefit of employés or sectionmen such as plaintiff's decedent. The court did not rule immediately upon this question, and the defendant proceeded to put in its evidence. Later, and before the close of the evidence on the part of the defendant, the court made a ruling, holding that the statute did apply to employés on the road, and overruling defendant's motion to direct a verdict, to which counsel for defendant excepted.

At the close of the evidence defendant's counsel submitted a number of requests to charge. Among others were the following:

"(14) I charge you that, under the law and the undisputed evidence in this case, the plaintiff is not entitled to recover, and your verdict must be for the defendant.

"(15) I charge you that there is no evidence in this case that would authorize the jury to find that the whistle upon this engine was not such a whistle as required by the statute of this State, or the rule of the defendant company.

"(16) I charge you, as a matter of law, that, under the undisputed evidence in this case, this engine, No. 8,357, was at the time of this accident equipped with a whistle of the kind and character required by statute and the rules of the defendant company."

· The court proceeded to charge the jury, and in its general charge it did not adhere to the ruling made upon the trial of the case, as to the applicability of section 6292, 2 Comp. Laws, but charged the jury that the statute was not applicable, and that the defendant was guilty of no negligence to the plaintiff's decedent for the failure to ring the bell or blow the whistle at highway crossings, as provided by said section; that the statute was obviously passed by the legislature for the benefit of those using, or about to use, the highway in the vicinity of the railroad crossing; that this statute does not impose any duty upon the defendant with respect to the sectionmen working upon the road; and that the plaintiff could not found a right of recovery against the defendant for failure to give the signals provided in said section, as the undisputed evidence showed that the plaintiff's decedent was a section hand upon the railroad of the defendant company at the time of the accident to him.

The court also charged the jury that the plaintiff could not found any right of action based upon the negligence of the section foreman, for the reason that such foreman and plaintiff's decedent were fellow-servants; also, that the engineer of the train causing the accident was a fellow-servant of the men composing the section crew, including the deceased; that plaintiff could not found any right of action upon any neglect or failure of duty of said engineer in the ordinary operation of his train on the morning in question; that the plaintiff could not recover on account of the neglect of the engineer to blow the whistle at any time, unless the jury should find that his

neglect to blow the whistle was occasioned by the fact of the whistle not being in a condition to be sounded. The case was submitted to the jury upon the following proposition:

"The specific charge or claim that the plaintiff now makes and now asks you to find against the defendant on is the failure to equip the locomotive with a whistle and to sound the whistle at this curve, and in the condition in which these men were, as I have explained to you fully and read from the requests of counsel.

"I charge you that, under the undisputed evidence in this case, plaintiff's decedent, Richard Lepard, was a section foreman on defendant's road about one year, but a short time before the happening of this accident; and that, under the undisputed evidence in this case, he had full notice and knowledge of the rules and instructions governing employés of the track department of the defendant railroad company; and that, under said rules and instructions, the section hands upon said railroad would have no right to rely upon the statutory signals at highway crossings being given by the trainmen while said section hands were working at or near said highway crossings; and that, under the rules and instructions governing such sectionmen, they were notified and required to look out for and protect themselves against accident from trains running upon the road.   *   *   *

"I charge you that plaintiff cannot recover in this action on account of the violation of the defendant of any of its rules contributing to her decedent's injury, as plaintiff's decedent had assumed all risks for accidents so caused. *   *   *

"If you find that the engine was equipped with a suitable whistle as defined by me, the plaintiff cannot recover.

"If you find that the death of said husband was occasioned by the negligence of said engineer in omitting to sound the whistle, and not in consequence solely of the defective and inefficient condition of the whistle, plaintiff cannot recover."

The plaintiff recovered a verdict and judgment, and the defendant has appealed, and has assigned many errors. We shall not have occasion to refer to them all. The assignments of error Nos. 30 to 35, inclusive, relate to the

refusal of the court to charge the jury as requested by defendant's counsel.

Among other things, it is the contention of defendant's counsel that the declaration counts solely upon the statute, and this question is raised by an assignment of error. As we have already indicated, the declaration contained but one count, and it was not demurred to. It sets forth clearly a statutory duty; and, in our opinion, it also sets forth a duty (independent of the statutory claim) to place, equip, and maintain a steam whistle upon the locomotive in reasonable repair.

This court has held that it is not necessary for a plaintiff to prove all of the acts of negligence charged; that, if any unlawful neglect of defendant is charged which resulted in the injury to the plaintiff complained of, he is entitled to recover, although the declaration may have charged other acts of defendant as negligence which were not proven. *Marquet* v. *La Duke*, 96 Mich. 596 (55 N. W. 1006); *Warren* v. *Porter*, 144 Mich. 699–704 (108 N. W. 435), (citing *Smith* v. *Railroad Co.*, 100 Mich. 153 [58 N. W. 651, 43 Am. St. Rep. 440]); *Malkowski* v. *Olfs*, 161 Mich. 303 (126 N. W. 199).

We understand it to be claimed that this branch of the declaration counts upon the common-law duty to furnish the locomotive with a suitable whistle as a reasonable instrumentality in the efficient operation of the locomotive, and a breach thereof. We are of opinion that a cause of action is here stated, independent of the statute.

As we understand it, this case was submitted to the jury upon the sole proposition that this whistle was a broken or defective whistle, and that it was not an appliance that could be efficiently used, and that the defendant was only liable in case the jury found that it sent out an engine that was improperly equipped with a whistle, one that could not be used to perform the function that it was intended for.

We have read this record with great care to discover whether there was any evidence to sustain this claim. In

the light of this record, we feel compelled to say that, instead of showing a broken or defective whistle, the uncontradicted testimony of all the witnesses in the case is that there was nothing the matter with the whistle. The plaintiff introduced as one of her witnesses the engineer in charge of the engine, who so positively testifies. It is true that there was some evidence tending to show that the whistle on this morning gave out a peculiar sound, described by one witness as a " squawking " sound. One of plaintiff's witnesses stated it sounded as though the pressure of the steam was low and condensed. Another testified that his idea was that there was something wrong about the steam; that it was either damp, moist steam, or that the operator didn't put on a full blast of steam to give a loud sound; that the tone was a "muffled tone." Another, that the condition of the atmosphere, by reason of fog, was the cause. Different theories were given by some of the plaintiff's witnesses as to the unusual sound of the whistle; one being that there may have been too much water in the boiler. The evidence being undisputed that the whistle on this engine was of the standard variety used on all the freight engines of the defendant, and that it was purchased from reputable whistle manufacturers, and the testimony as to the peculiar sound being just as consistent with the perfect condition of the whistle as with its imperfect condition, and it appearing that the person who operated the whistle was a fellow-servant of plaintiff's decedent, and that no recovery could be had for his mismanagement of the whistle, or of the improper filling of the boiler, we do not think that the jury should have been left to speculate as to the cause of the peculiar sound testified to by some of the witnesses.

We are constrained to say that, in our opinion, there was no negligence of the defendant shown, nothing that would indicate that the whistle was a defective one; and that the case should have been taken from the jury because of the failure of the plaintiff to make a case under the evidence.

The evidence was undisputed that the engine had been in the shop for repairs in other parts, and it also appeared that it had been reported that the whistle valve did not open enough; that it was repaired, and left the shop in perfect condition as to the whistle, on June 8th, and again on June 12th.

The engineer, who had been called as a witness for the plaintiff, was recalled by the defendant for further direct examination. Upon his cross-examination he was asked whether he had not stated at the depot at West Branch, on the morning of the accident, and a short time after the accident, in the presence of divers persons, as follows:

"I blew the whistle, and the damn thing wouldn't work, or didn't."

He denied that he had made such statement. He was then asked if, on that occasion, he did not state:

"I blew the whistle, and the damn thing was no good anyway."

He denied this. Testimony was afterwards offered in rebuttal by plaintiff tending to show that this witness had made such statement. This is complained of by defendant's counsel, and error is assigned upon it.

We are of opinion that, the defendant having made the engineer its own witness, it was competent upon cross-examination to ask the questions indicated, and that it was so far material as affecting his testimony that it was competent to prove the statements by other witnesses; it being in the nature of collateral impeachment. It could not be used for any other purpose, and was no evidence of the negligence of the defendant.

We are so strongly impressed with the claim that there was no evidence of the negligence of the defendant that we think it was error to submit the case to the jury, and that for the error indicated the judgment below should be reversed, and a new trial granted. We find no other error that is likely to arise upon a new trial.

It may properly be said that, under the charge of the

court, the question as to the statutory signals is not before us. But, as this case must go back for a new trial, it is only fair to the parties, and to the trial court, the question having been briefed by counsel, that we express our opinion whether sectionmen or railroad employés can base a right of action on the failure of the railroad company to sound the statutory whistle at highway crossings, as is provided by section 6292, 2 Comp. Laws. That statute provides as follows:

"A bell of at least thirty pounds weight, and a steam whistle, shall be placed on each locomotive engine, and said whistle shall be twice sharply sounded at least forty rods before the crossing is reached, and after the sounding of the whistle the bell shall be rung continuously, until the crossing is passed, under a penalty of $100.00 for every neglect;   *   *   *   and the company shall also be liable for all damages which shall be sustained by any person, by reason of such neglect."

This statute in its present form, so far as quoted, has been the law of this State for many years. It received a construction by this court in the case of *Sanborn* v. *Railroad Co.*, 91 Mich. 538 (52 N. W. 153, 16 L. R. A. 119). This opinion was by a divided court. The vital question is whether this plaintiff is in a position to invoke this statute. It is a general rule that a civil action is maintainable where the person complaining is of a class entitled to take advantage of the law, is a sufferer from the disobedience, is not himself a partaker in the wrong of which he complains, or is not otherwise precluded by the principles of the common law from his proper standing in court. *Syneszewski* v. *Schmidt*, 153 Mich. 438, at page 441 (116 N. W. 1107).

It is a well-established principle that the violation of a statutory duty is the foundation of an action in favor of such persons only as belong to the class intended by the legislature to be protected by such statute.

In 33 Cyc., at page 784, the following language is used with reference to statutes of this character:

" In the absence of a provision in the statute specifically designating persons to whom the duty of giving crossing signals or warnings is due, it is generally held that such warnings are due only to persons on the highway using, about to use, or who have just used, the crossing, and not to trespassers or licensees on the railroad tracks or right of way at places other than a crossing, nor to persons riding or driving along parallel to the railroad. In some jurisdictions, however, it is held that while the statutory signals are intended primarily as warnings to persons using, or intending to use, the crossings, and not for those walking along the track or right of way, yet, with regard to the latter as well as to the former, a failure to comply with the statute is evidence of negligence to be considered by the jury, together with other facts tending to show want of reasonable care on the part of the railroad company; but, if the failure to give such signals is the only negligence imputable to the railroad company, it is not liable in such cases. Under some statutes such signals or warnings are held to be due to all persons lawfully on or near the crossing who may be exposed to danger by the approaching engine or train whether on the highway or on the right of way "— citing many cases.

A leading case upon this subject, in this country, is that of *Randall* v. *Railroad Co.*, 109 U. S. 485 ( 3 Sup. Ct. 323 ). The opinion in that case was written by Justice Gray, and was concurred in by the entire court. In that case the statute of West Virginia was involved, which reads as follows :

" 'A bell or steam whistle shall be placed on each locomotive engine which shall be rung or whistled by the engineer or fireman at the distance of at least sixty rods from the place where the railroad crosses any public street or highway, and be kept ringing or whistling until such street or highway is reached,' under a penalty of not exceeding $100 for each neglect; the corporation owning the railroad shall be liable to any person injured for all damages sustained by reason of such neglect."

The action was brought by a brakeman in the employ of the defendant company for personal injuries received, while working a switch, by being struck by one of its locomotive engines in the yard of the defendant, where

there was a network of tracks near the junction of a branch road with the main road, and about 10 rods from a highway crossing. After referring to the doctrine of fellow-servants, and holding that the engineer and the plaintiff were fellow-servants engaged in a common object, and in the employ of a common master, and holding that an action could not be maintained for the negligence of the engineman in not giving due notice of the approach of his engine, the court uses the following language:

"The statute of West Virginia, on which the plaintiff relies, has no application to this case. There is no evidence that the engine which struck the plaintiff was about to cross the highway, and the main, if not the sole, object of this statute evidently was to protect travelers on the highway. *O'Donnell* v. *Railroad Co.*, 6 R. I. 211; *Harty* v. *Railroad Co.*, 42 N. Y. 468. It may perhaps include passengers on the trains, or strangers not trespassers, on the line of the road. But it does not supersede the general rule of law which exempts the corporation from liability to its own servants for the fault of their fellow-servants."

Our attention has been called to the case of *Everett* v. *Railway Co.*, reported in 100 Minn. 309 (111 N. W. 281, 9 L. R. A. [N. S.] 703). That case reviews not only the text-books, but the reported cases at great length, and holds that a statute, similar to ours, did not impose upon the railroad company the duty to give the required signal for the benefit of a person who was driving a team along a street parallel to the railway track near a crossing, but who did not intend to use the crossing; and where, under such circumstances, an approach of the train frightened the horses of the plaintiff and caused them to run away, negligence could not be predicated upon the failure to give the crossing signals in order that the driver might have warning and an opportunity to care for his team; and it was held that the plaintiff was not within the class which the legislature intended to protect by the statute which required the giving of the designated signal. In that case

166 MICH.—25.

the court, in its opinion, quotes from 3 Elliott on Railroads, §§ 1158, 1264, as follows:

" 'There is conflict of authority as to who may claim the benefit of the statutory signals, and it may depend somewhat upon the language of the particular statute. Where the statute does not specifically designate the class to whom the duty is owing, the courts have usually construed it to be due only to those who are about to use, are using, or have lately used, the crossing, and have held that no others could recover for injuries resulting from a failure to give the signals; but other courts have gone further, and hold that the duty is for the protection of all persons lawfully at or near the crossing from any danger to be apprehended from the sudden approach of a train without warning.'

" Summarizing the cases, the author says:

" 'According to what we regard as the better rule, the company owes no duty to one who is not upon the highway near the crossing, to give the statutory signals; and it is not, therefore, liable to one whose horse, while upon a parallel highway which does not cross the track, or in a field, is frightened and runs away because the statutory signals were not given for the crossing of a neighboring highway, and the owner thus failed to hear and prepare for the approaching train.' "

Further quoting from 2 Thompson's Commentaries on Negligence, § 1560, as follows:

" ' It has been well reasoned that this omission is negligence as matter of law only when injury results therefrom to persons or animals endeavoring or intending to cross the track upon a street or highway crossing; and this, for the manifest reason that the object of the statute is to protect persons and animals in this situation and not in other situations; the prevailing view being that such signals are intended only for the protection of persons or vehicles on the crossing, or about to use the crossing, and not (for example) for the protection of those driving along a highway parallel to the railroad.' ' '

Again, quoting from 2 Shearman & Redfield on Negligence, § 470, the following language is used:

" ' Statutes requiring signals at crossings are enacted only for the benefit of persons intending to cross the track at a lawful crossing, or proceeding on a highway parallel with the track. Persons walking along the track, or trespassing thereon, or occupied in work upon adjoining land, are not entitled to the benefit of such statutes, whatever may be their common-law rights.'

"See, also, Patterson, Railroad Law, § 160; 2 Rorer, Railways, p. 1004."

The main case reviews the authorities generally in this country, and holds that the cases sustain the views above expressed. In many of the States the statutes contain the language that the corporation shall be liable for damages which shall be sustained by any person by reason of such neglect. This is notably so in *Randall* v. *Railroad Co., supra*, and in *St. Louis, etc., R. Co.* v. *Payne*, 29 Kan. 166, where the opinion was written by Chief Justice Horton, and concurred in by Mr. Justice Brewer, then a member of that court. The same doctrine applies in *Missouri Pacific R. Co.* v. *Pierce*, 33 Kan. 61 (5 Pac. 378), where the court uses the following language:

" The purpose of the legislature in requiring this warning to be given before reaching a highway is manifestly to afford protection to persons or property that may be upon, or passing over, such highway, and therefore the omission of the company to comply with this statutory requirement cannot be held to be negligence as to any injury done except at the crossing of the particular highway for which the whistle is required to be sounded."

In *East Tennessee, etc., R. Co.* v. *Feathers*, 10 Lea (Tenn.), 103, the statute was held to have no application where a person was injured while traveling along a public road, parallel to the railroad. The court said:

"It seems clear that this language imposes a duty on the company in order to give warning to persons about to cross the road, or who may be in the act of crossing possibly, or had just passed over the road; but it does not apply to parties who are not about to cross the road, but are simply traveling alongside, as in this case, showing an evident purpose not to cross at all."

A similar doctrine is applied in *Louisville, etc., R. Co.* v. *Hall*, 87 Ala. 708 (6 South. 277, 4 L. R. A. 710, 13 Am. St. Rep. 84). It appeared in that case that the plaintiff, a brakeman, was injured by being struck by an overhead bridge, and it was claimed that the defendant was liable because the whistle had not been blown at least

one-fourth of a mile before reaching the public crossing near by.

In *Everett* v. *Railway Co.*, *supra*, the court said:

"In *Louisville, etc., R. Co.* v. *Hall*, 87 Ala. 708 (8 South. 277, 4 L. R. A. 710,13 Am. St. Rep. 84), said Chief Justice Stone:

"'That statute has nothing to do with this case. Its design was to warn and protect persons who, at a public crossing, pass across and directly on the track, and who would be in danger of being struck and run over by an approaching train.'

"* * * To the same effect, see *Flint* v. *Norwich, etc., R. Co.*, 110 Mass. 222. In *Christy's Adm'r* v. *Chesapeake & Ohio R. Co.*, 35 W. Va. 117 (12 S. E. 1111), the statute was held to be intended for the protection of those using the track at the crossing, and not for those using it elsewhere, and therefore no duty in this respect was owing to a section hand, an employé of the road, who was struck while standing on the track. The same rule had previously been applied in the case of a person using the railway tracks as a footpath."

We cannot undertake to review all of the authorities cited in this case. We refer to the following cases:

*Rohback* v. *Pacific Railroad*, 43 Mo. 187. In this case at the time of the injury the testimony showed that the plaintiff, with divers other servants of defendant, was at work on the main track and switches of defendant digging and shoveling dirt upon a part of the track in the yard of defendant, between Jefferson and Madison streets, in Jefferson City, and where other servants of the defendant were about the same time and place making up a train, and in doing so had immediately before the accident passed up and down, once or twice, or perhaps oftener, upon the tracks where the plaintiff and others were at work; and that finally, in backing the train, plaintiff, failing to get out of the way, was run over by it and received very serious injuries. The statute in Missouri made it incumbent upon the railroad companies to have a bell placed on each locomotive to be rung at a distance

of at least 80 rods from where the railroad should cross a traveled or public street, and to be kept ringing until it should have crossed such road or street. And the last clause of the section declares:

"And said corporation shall also be liable for all damages which shall be sustained by any person by reason of such neglect."

The question raised was whether servants or employés of the company are to be included within the designation "any person," according to the true sense and meaning of the act. The court held that the section of the statute above referred to is a transcript of the New York statute, that the omission by a railroad company to give the signals required on the approach of a locomotive within 80 rods of a highway crossing was a breach of duty to the passengers whose safety it imperiled, and to the wayfarer whom it exposes to mutilation and death, and reference is had to the case of *Ernst* v. *Hudson River R. Co.*, 35 N. Y. 9 (90 Am. Dec. 761).

The court in the Missouri case uses the following language:

"After a somewhat careful examination I have been unable to find any case where it was sought to bring a servant within its provision. It is obvious that the enactment of the law was intended primarily for the protection of the traveling public and passengers. At a public crossing or street, frequented by travelers and persons engaged in business, the danger of collision and accident is constant and recurring, without a signal warning them of the approach of the train.

"Not only the danger to be apprehended to those who may happen to be upon the track, but the lives of the passengers are also jeopardized. The law, in a previous part of the section, subjects the company to a penalty for omission of duty in ringing the bell; but, lest that might be deemed exclusive, it also makes it responsible for damages at the suit of any person injured. There is a strong and peculiar reason why this precaution of giving a signal should be observed, as regards passengers and the traveling public; but it is not apparent when it comes to be

applied to the servants of the road. There is nothing to show that from their business and occupation they are in greater hazard at a public crossing than at a private crossing, or anywhere else on the track. That the draftsman of the law used the word ' person' in the sense that it should apply to the classes above referred to, and without any intention of changing the common-law construction, can scarcely be questioned."

*O'Donnell* v. *Providence & Worcester R. Co.*, 6 R. I. 211. The statute in that State provided as follows:

"Every railroad company incorporated under the authority of this State shall cause a bell of at least thirty-two pounds in weight to be placed on each locomotive engine passing upon their road; and the said bell shall be rung at the distance of at least eighty rods from the place where said railroad crosses any turnpike, highway, or public way upon the same level with the railroad, and shall be kept ringing until the engine has crossed such turnpike or road."

After providing a penalty for the violation of this statute, section 3 concludes in the following language:

"And the said railroad company shall also be liable for all damages sustained by any person by reason of such neglect or refusal on the part of the company."

In this case it appeared at the trial that the plaintiff was walking upon the tracks of the defendant's railroad, and was not at any place where the railroad crossed any turnpike, highway, or public way, upon the same level with the railroad. The court held that the statute above referred to was exclusively designed for the benefit of persons crossing the turnpike, highway, or public way, on a level with the railroad; and hence a person who was injured by the engine while walking along the tracks of the railroad, and not at any crossing, could not recover damages against the railroad company for such injury, upon the ground that the injury was caused by the company's neglect to ring the bell upon the locomotive, as required by statute.

*Harty* v. *Railroad Co.*, 42 N. Y. 468.   The statute of that State provided that every railroad company should keep a bell or steam whistle upon every engine, and cause the bell to be rung, or the steam whistle to be blown, at the distance of at least 300 yards from the place where any such railroad crossed a turnpike, road, or highway upon the same level with said railroad, and such bell should be kept ringing, or such steam whistle should be kept blowing, until the engine had crossed such turnpike or highway, or had stopped, and a penalty was imposed for not complying with the provisions.   The plaintiff's intestate was struck by one of the defendant's engines and fatally injured at a point 200 feet east from the railroad crossing.   The court held that the intestate was not within the protection of this law, and that the railroad owed him no duty under the law to ring the bell, or sound the whistle.   The court said:

" If this company was bound to give these warnings to this man, then every railroad company is bound to do so to every person who may be upon the railroad ahead of a train, although he is not on the track and not in a place of danger.   I think it would be unreasonable to carry the precautionary obligations of railroad companies to such an extent; and I therefore hold that this railroad company was guilty, as to the intestate, of no negligence in not ringing the bell or blowing the whistle, under the circumstances disclosed in this case."

In the case of *Norfolk & Western R. Co.* v. *Gesswine,* in the Circuit Court of Appeals, Sixth Circuit, reported in 144 Fed. 56, 75 C. C. A. 214, Judge Lurton wrote the opinion.   In that case the uncontradicted evidence was that a trackman was injured, while engaged in working on the track, from a collision with a passing train.   The statute of Ohio, where the case arose, provides for the giving of signals for railroad crossings.   The court holds that such statutes are obviously for the benefit of those using, or about to use, the crossing, and do not impose any duty in respect to any other class of per-

sons.   This is the construction placed on the Ohio statute
in *Cleveland, etc., R. Co.* v. *Workman*, 66 Ohio St.
509 (64 N. E. 582, 90 Am. St. Rep. 602).  The court said
[ *Norfolk & Western R. Co.* v. *Gesswine, supra*] :

> "Gesswine was not a traveler using, or about to use, a
> crossing.  He was not even at work upon the track at
> a crossing, though there were crossings on either side of
> him.   *  *  *   Failure to discharge some duty owed by
> the company to employés engaged in track repairing,
> under the circumstances of this case, is indispensable to a
> recovery by this plaintiff, and evidence to establish a cus-
> tom to give signals for another purpose, and for the bene-
> fit of the general public using a crossing, was not compe-
> tent or relevant to make out the breach of an actionable
> duty to Gesswine."

It is held that the lower court erred in permitting a
witness to testify that he, and others of the gang of
which the witness and deceased were members, relied
upon the custom of the company to ring and whistle for
such crossing to warn them, when repairing in the vicin-
ity, of the approach of such train.  Sectionmen whose
duty requires them to work upon the track cannot predi-
cate negligence upon disobedience of such a law.

In *Philadelphia, etc., R. Co.* v. *Holden*, 93 Md. 417
(49 Atl. 625), the court deals with the question of failure
to give signals at public crossings, and held that the rule
did not apply to a person who was injured in crossing the
railroad at a private crossing.   The court, in speaking of
the case of *Sanborn* v. *Railroad Co.*, *supra*, says that this
case is cited in 3 Elliott on Railroads, p. 1733—

> "For the proposition that, where a private crossing is
> located so near a public crossing that signals given there-
> at can be distinctly heard at the private crossing, the per-
> sons using the private crossing are entitled to the benefit
> of the signals required at the public crossing, and that if
> the company fails to give such signals, it will be guilty of
> negligence.  But the learned author remarks: 'This,
> however, seems to us questionable.'
> "In 8 Am. & Eng. Enc. Law (2d Ed.), p. 414, title

' Private Crossings,' a number of authorities are collected, showing considerable divergence of views in regard to the giving of signals required by statute. But the question here presented, namely, whether the failure to blow the whistle at a public station about 2,000 feet from the private crossing where the accident happened is evidence of negligence of the defendant at the latter as respects one crossing at the private or farm crossing, has not often arisen. It was directly presented in *Cahill* v. *Railway Co.*, 92 Ky. 345 (18 S. W. 2), where the question was answered in the affirmative. But in *Chicago, etc., R. Co.* v. *Eininger*, 114 Ill. 79 (29 N. E. 196), it was held that flagmen are for the protection of those crossing at a public crossing. And so, also, it appears that the injury sued for in *Ransom* v. *Railway Co.*, 62 Wis. 178 (22 N. W. 147, 51 Am. Rep. 718), was inflicted at a point where a public highway crossed the railroad. To the same effect are *Norton* v. *Railroad Co.*, 113 Mass. 366, and *Wakefield* v. *Railroad Co.*, 37 Vt. 330 (86 Am. Dec. 711). In *Harty* v. *Railroad Co.*, 42 N. Y. 468, it appears that the railroad company was required by statute to ring bells, etc., at public crossings, and it was held that no duty was imposed as to persons not at public crossings, though lawfully on the track at another point. In *Vandewater* v. *Railroad Co.*, 135 N. Y. 588 (32 N. E. 636, 18 L. R. A. 771), this question was presented but not decided. Peckham, J., said :

" ' It may be that evidence of the omission to give any signals for the highway [crossing] would not be admissible as bearing upon the question of defendant's negligence in running its trains at the farm crossing 2,000 feet [distant].'

" It seems to us, however, that upon principle one who, like the plaintiff, was at a private crossing nearly half a mile distant from the place where the signal was required to be given for the public crossing, should not be allowed to complain, under the circumstances of this case, of a failure to give the signal for the latter. Undoubtedly the regulation was made for those at the public crossing, and to extend it to private crossings would practically nullify the long line of decisions in this State, to the effect that no signals are required at the latter. For, if the contention of the plaintiff be sustained, if the defendant fails to give the signal at a public crossing, a double duty is violated, namely, a duty to those about to cross or crossing

at a public crossing, and a duty to those in the same situation at a private crossing, whereas we have always held hitherto, that a railroad company owes no such duty to the latter. The result would be that the defendant would be held to the same degree of care, and the same liability would be imposed, when there is a duty to give the signal, as in cases where no such duty exists. A view leading to such a conclusion cannot be adopted."

In considering this question we have examined more than two score of cases, including all of those cited by counsel upon both sides in their briefs. We have been unable to find a single case where it has been held that a sectionman, or other employé, of a railroad company has been permitted to invoke this statute, or one similar to ours. We have found a number, including *Randall* v. *Railroad Co.*, *supra*, and kindred cases, which hold that an employé of a railroad company cannot invoke this rule; that he is not within the class intended to be protected by the statute. His work and duty is upon the track, and is as great away from the crossing as at the crossing. The whole history of the legislation upon this subject shows that it has been for the benefit of the traveler upon the highway who is about to cross, is crossing, or has crossed the highway, and probably might be invoked by a passenger who was injured by reason of a collision caused through the neglect to give the signals required. To hold otherwise would be to do away entirely with the doctrine of fellow-servants, for the statutory duty to use the signals is nondelegable. The fellow-servant doctrine exempts corporations from liability to their own servants for the fault of their fellow-servants, has become a part of the settled law of this country and of England, and it should not be frittered away indirectly by such construction as is here contended for.

For the error in submitting the case to the jury, as pointed out, the judgment below is reversed, and a new trial granted.

McAlvay and Brooke, JJ., concurred with Stone, J.

BLAIR, J.   I concur in the result upon the ground that there was no evidence tending to prove the negligence relied on, viz., that the locomotive was not equipped with a suitable whistle.

OSTRANDER, C. J., concurred with BLAIR, J.